(No. 62371

WAYNE O. SMITH *et al.*, Appellees, v. AIROOM, INC., Appellant.

*Opinion filed October 17, 1986.—Rehearing denied December 1, 1986.*

210

MORAN, J., took no part.

Rathje, Woodward, Dyer & Burt, of Wheaton (Alfred E. Woodward and S. Louis Rathje, of counsel), for appellant.

Paul A. McLennon, Sr., and Gerald M. Sheridan, Jr., of Wheaton, for appellees.

JUSTICE RYAN delivered the opinion of the court:

The plaintiffs, Margaret Smith and her husband, Wayne O. Smith, filed a two-count complaint in the circuit court of Du Page County against the defendant, Airoom, Inc. (Airoom), seeking to recover compensatory and punitive damages for an alleged breach of contract and breach of express and implied warranties of habitability. Airoom was defaulted and judgment was entered against it and in favor of the plaintiffs for $50,000, plus costs. Approximately seven months after the date upon which the judgment was entered, Airoom filed a verified petition, together with supporting affidavits, pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). The petition sought to vacate the default judgment on the ground that its entry had resulted from excusable mistake. The circuit court denied the petition. The appellate court affirmed the order of the circuit court (134 Ill. App. 3d 1161) in a Rule 23 order (87 Ill. 2d R. 23), and we granted Airoom's petition for leave to appeal (94 Ill. 2d R. 315).

On November 27, 1982, the plaintiffs entered into a written contract with Airoom for the construction of an 8-foot by 23-foot solar-unit room addition to their Naperville residence. The work was completed in March 1983, at which time the $16,500 purchase price was paid in

full. Soon after the solar unit was installed, however, it began to leak. From March to April 1983, Airoom attempted to remedy the problem at its own expense, under the terms of its 15-year guarantee. Notwithstanding Airoom's efforts, the leakage problems persisted.

On June 1, 1983, the plaintiffs filed a two-count complaint in the circuit court of Du Page County. The complaint alleged, *inter alia*, that the solar unit was improperly and defectively installed; that the unit was unusable because of water leakage; that the leakage prevented the plaintiffs from securing an occupancy permit; and that Airoom neglected, failed, and refused to cure the defects in workmanship and materials. Count I sought compensatory damages for the alleged breach of contract and breach of express and implied warranties of habitability. Count II sought punitive damages for the alleged wilful and wanton failure to repair and/or replace the nonconformities in workmanship.

On June 2, Airoom was served with summons and a copy of the complaint at its place of business in Chicago. Service was had upon Richard Tucker, Airoom's sales manager. Airoom failed to answer or appear within the requisite 30 days (87 Ill. 2d R. 101(d)), however, and on July 21, the plaintiffs, without notice to Airoom, had a default judgment entered and continued the cause for a hearing on the amount of damages. This hearing was held on October 31, 1984, and Airoom was not given notice of the hearing. At the hearing, the plaintiffs presented the court with a written report of a registered architect which identified the defects in the room addition and recommended the removal of the roof and the reconstruction of the entire addition. Plaintiff Wayne Smith testified as to the cost of removal of the addition and the proper installation of a similar one. Smith testified that one contractor estimated the cost to be between $35,000 and $40,000, while a second contractor estimated the

cost to be between $35,000 and $50,000. Based on this evidence, the circuit court entered a judgment against the defendant for $50,000, plus costs, being the "maximum cost of rebuilding that was testified to here this morning." The court, however, declined to enter a judgment for punitive damages.

On April 18, 1984, a non-wage-garnishment summons was served on the Bank of Lincolnwood in order to satisfy the judgment previously entered. On May 16, the circuit court entered judgment in favor of the plaintiffs and against the bank as garnishee. On May 17, the defendant, represented by counsel, filed a verified petition under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401) to vacate the default judgment. The petition alleged that the substituted service of summons on Airoom was improper because Richard Tucker "was not a duly authorized agent to receive process nor was he an officer or director or shareholder of said corporation." The petition also alleged that a meritorious defense was available to Airoom against the plaintiffs' claim. In defense, Airoom stated that the leaks in the solar-unit room addition were the "result of the preexisting structural defect in the jamb of the patio door located above the room addition." Finally, the petition maintained that Airoom's failure to respond to the judgment was an excusable mistake because (1) Airoom, through its duly authorized officers or agents, never received the summons and complaint from Richard Tucker and (2) Airoom was repeatedly at the plaintiffs' premises in their presence and the presence of their attorney "and at no time was the lawsuit or the default judgment ever mentioned by the attorney." The petition was supported by the affidavits of Richard Belson, Burton Klein, Richard Tucker, and Phil Cohen.

Richard Belson asserted in his affidavit that he is the production manager for Airoom. According to the affida-

vit, he sent an independent contractor to the plaintiffs' residence in April 1983 to correct the leakage problems. The contractor, however, was unable to determine the cause of the leakage. Belson acknowledged in the affidavit that he met with Mrs. Smith and her attorney in May 1983 because of further complaints and agreed to replace the duct work, to disassemble the solar unit, and to clean and reinstall it. Belson averred that he again met with Mrs. Smith and her attorney in July 1983 and agreed to install sheet-metal flashing between the addition and the wall of the existing building. Belson asserted that in August 1983 Airoom employees had determined that water leakage from the roof near the existing wall was caused by a preexisting structural defect in the jamb section of the patio door leading onto the roof of the addition, a balcony. Belson stated he sent a contractor to remedy the problem, but Mrs. Smith refused to permit the alteration. Finally, Belson claimed in the affidavit that Airoom had no knowledge that a lawsuit was pending until the garnishment proceeding and that neither the plaintiffs nor their attorney mentioned that a suit had been filed or a default judgment entered.

In his affidavit, Burton Klein stated that he is the president and the registered agent of Airoom and that Richard Tucker was not a director, officer, shareholder, or the registered agent of Airoom. According to the affidavit, Klein did not realize there was a judgment in the case until the nonwage garnishment of Airoom's bank account.

Richard Tucker's affidavit indicated that he was a "sales person" for Airoom, not an officer, director, stockholder or agent of the corporation authorized to receive summons for Airoom. The affidavit also acknowledged that Tucker received the summons and complaint. However, according to the affidavit, Tucker could not re-

call what he did with the documents thereafter.

Phil Cohen, an employee of Drake Construction, stated in an affidavit that he was contacted by Richard Belson to meet with an Airoom service man at the plaintiffs' residence in October 1983 to pull out the existing patio door which was located directly above a portion of the addition. Cohen stated, however, that Mrs. Smith refused to permit them to remove the patio door.

The plaintiffs' response to the section 2—1401 petition alleged that Airoom had not shown due diligence because it knew of the litigation by June 3, 1983, but failed to answer or appear prior to the date of the default judgment. The response also alleged that Airoom did not have a meritorious defense because the leaks were not caused by a preexisting structural defect in the jamb section of the patio door. The plaintiffs' response to Airoom's petition to vacate was supported by the counteraffidavits of Margaret Smith, Paul McLennon, Sr., Joseph Pavone, Larry Work, and Wayne Smith.

Margaret Smith, in her affidavit, stated that she first met with her attorney and Richard Belson to discuss the alleged construction defects in June 1983. She stated that they met again in August 1983, at which time Airoom attempted to cure the water leakage by adding tar to the roof. She further stated in her affidavit that she told Belson at this August meeting that she did not like being involved in this lawsuit.

Plaintiffs' attorney, Paul McLennon, Sr., in his affidavit, stated that he received a telephone call on June 9, 1983, from Richard Belson. According to the affidavit, Belson advised McLennon he was calling in response to the summons received in this cause. McLennon stated they met the next day at the plaintiffs' home. Belson agreed to repair any defects, but would be unable to begin work until July 11. McLennon stated in the affidavit that he told Belson this was not satisfactory, since suit

was pending and time running out. The affidavit indicated that Airoom worked on the premises from June 20 to 24, but the problems remained. McLennon further indicated in his affidavit that he met with Belson again on August 8 at the plaintiffs' home. On August 17, McLennon wrote a letter to Belson claiming the leakage continued and the heating-ventilation system remained unrepaired. McLennon stated that he telephoned Belson on October 11, advising him that a repairman examined the plaintiffs' residence on October 10 and concluded that the absence of aluminum flashing and the improper roofing were causing the leakage. Reminding Belson of the pending lawsuit, McLennon stated that he was going to bring it to a conclusion.

Joseph Pavone, a former employee of Airoom, stated in his affidavit that he was aware of the plaintiffs' lawsuit prior to his leaving Airoom in July 1983. Pavone also stated that the plaintiffs' lawsuit was common knowledge among the personnel and sales force of Airoom.

Larry Work stated in an affidavit that he had worked on plaintiffs' addition at Airoom's direction as an independent contractor. The affidavit indicated he received a letter from Richard Belson on October 14, 1983, which referred to the pending lawsuit. The letter included both a copy of a Belson letter to Pat Gallagher, who had also worked on the addition, and copies of the complaint and summons. The Gallagher letter from Belson complained of the shoddy installation by Gallagher which allegedly failed to conform to specifications and stated that the structure had to be rebuilt. The affidavit noted that Belson advised Gallagher of the plaintiffs' lawsuit and threatened that Airoom would bring suit against Gallagher as a subcontractor if necessary.

Plaintiff, Wayne Smith, in his affidavit, outlined the problems with the project which he stated still persisted.

Smith also stated that the building permit was cancelled.

Airoom thereafter filed two supplemental affidavits in support of its petition. Richard Belson, contrary to his previous assertion, acknowledged in one of the affidavits that he had received the summons and complaint. Belson, however, averred that although he knew suit had been commenced, it was his understanding that the plaintiffs were not going to proceed with the case as long as Airoom attempted to correct the problems. Belson further stated that neither the plaintiffs nor their attorney advised him that a default judgment had been entered. Belson also denied that the plaintiffs' attorney had told him that the suit was pending or that it would be brought to a conclusion. Burton Klein's supplemental affidavit reiterated that he never saw copies of the summons and complaint until the nonwage garnishment of Airoom's bank account.

At the hearing on the petition no other evidence was introduced; only arguments were heard. The matter was taken under advisement, and the circuit court subsequently entered an order denying the petition to vacate the default judgment. The court found that the petition failed to disclose diligence on the part of Airoom. The circuit court also found that the plaintiffs had not acted unfairly or unreasonably. As noted above, the appellate court affirmed the circuit court's order denying Airoom's petition to vacate the default judgment in a Rule 23 order (87 Ill. 2d R. 23).

Section 2—1401 of the Code of Civil Procedure, formerly section 72 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 72), provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated "after 30 days from the entry thereof." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401(a).) To be entitled to relief under section 2—1401, the petitioner must affirmatively set forth specific factual allega-

tions supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. (*Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, 717; *In re Application of County Treasurer* (1983), 114 Ill. App. 3d 921, 923; *Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 1065; *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 673; see Nichols, Illinois Civil Practice sec. 4631, at 140-41 (1981); see generally Davis, *The Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J. 820 (1967).) The quantum of proof necessary to sustain a section 2—1401 petition is a preponderance of the evidence. (*Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478, 482; *David Plywood & Lumber Co. v. Sloan* (1977), 52 Ill. App. 3d 71, 74; *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 317.) Whether a section 2—1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented. (*Beno v. DeBoer Asphalt Paving Co.* (1983), 114 Ill. App. 3d 871, 873-74; *Canton v. Chorbajian* (1980), 88 Ill. App. 3d 1015, 1021; *Eastman Kodak Co. v. Guasti* (1979), 68 Ill. App. 3d 484, 487.) As such, a court of review is justified in disturbing the judgment of the circuit court only if it finds that the court abused its discretion. *Stallworth v. Thomas* (1980), 83 Ill. App. 3d 747, 751; *M.L.C. Corp. v. Pallas* (1978), 59 Ill. App. 3d 504, 510; *George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973, 977.

As noted above, two elements are generally necessary to establish a legally sufficient section 2—1401 petition, namely a meritorious defense or claim in the original action, and due diligence on the part of the petitioner. For the purposes of this appeal, we need not consider

whether Airoom's petition alleges sufficient facts establishing a meritorious defense against the plaintiffs' claims. The circuit court denied Airoom's petition to vacate the default judgment solely on the basis of its lack of diligence in presenting a defense. Our inquiry on review is thus directed to the issue of Airoom's diligence and whether the circuit court erred in finding that Airoom's conduct did not constitute due diligence.

Due diligence requires the section 2—1401 petitioner to have a reasonable excuse for failing to act within the appropriate time. (*Steinberg's Department Store, Inc. v. Baysingar* (1980), 86 Ill. App. 3d 1140, 1143; *National Industries Inc. v. Howard* (1977), 54 Ill. App. 3d 416, 418; *Bird v. Kostbade* (1977), 52 Ill. App. 3d 741, 743.) Since section 2—1401 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence (*Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467; *Lofendo v. Ozog* (1983), 118 Ill. App. 3d 237, 241), a party relying on section 2—1401 is not entitled to relief "unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court." (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505.) Specifically, the petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment. (*American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 643; *Westphall v. Trailers, Campers, Campgrounds, Inc.* (1979), 76 Ill. App. 3d 205, 207; *Chase v. Cummingham* (1978), 64 Ill. App. 3d 54, 56.) In determining the reasonableness of the excuse offered by the petitioner, all of the circumstances attendant upon entry of the judgment must be considered, including the conduct of the litigants and their attorneys. *Canton v. Chor-*

*bajian* (1980), 88 Ill. App. 3d 1015, 1022-23; *Hogan & Farwell, Inc. v. Meitz* (1976), 45 Ill. App. 3d 216, 222; *Riley v. Unknown Owners* (1972), 6 Ill. App. 3d 864, 866.

As discussed earlier, the allegations of a section 2—1401 petition must be proved by a preponderance of the evidence. (*American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 643; *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 317.) If the respondent answers the petition, thus raising issues for the determination of the circuit court, then the petitioner has the burden of proving his case by the required quantum of competent evidence. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505; *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467.) A review of the plaintiffs' response to the petition in the present case indicates that the plaintiffs challenged the facts upon which Airoom based its allegations of due diligence. Where, as here, the facts sufficient to support the grant of relief under section 2—1401 are challenged by the respondent, a full and fair evidentiary hearing must be held. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 285-87; *Manning v. Meier* (1983), 114 Ill. App. 3d 835, 840.) Airoom, however, waived its right to an evidentiary hearing involving the testimony of witnesses and the opportunity to cross-examine. Thus, on the basis of the pleadings, affidavits, and supporting materials in evidence, we cannot say that the circuit court erred in finding that Airoom was aware of the impending litigation before the default judgment was entered and that Airoom failed to exercise due diligence in defending against the plaintiffs' claims.

The chronological development of the litigation before us demonstrates a lack of diligence on the part of Airoom in presenting its defense to the circuit court in the original action. The record establishes that Airoom was

served with summons and a copy of the complaint at its place of business in Chicago on June 2, 1983; that the default judgment was entered on October 31, 1983; that on April 18, 1984, a garnishment proceeding was instituted against Airoom's bank account, with a judgment entered against the bank on May 16, 1984; and that Airoom's petition was filed on May 17, 1984. The only excuses Airoom gives for the delay in presenting its defenses to the plaintiffs' claims are: (1) "[Airoom] through its duly authorized officers or agents never received the summons and complaint from Richard Tucker" and (2) "[Airoom] was repeatedly at the premises of the plaintiffs in presence of the plaintiffs and the plaintiffs' attorney trying to correct any errors and trying to settle the matter and at no time was the complaint or the default judgment ever mentioned by the attorney." However, in a supplemental affidavit filed in support of Airoom's petition, Robert Belson, Airoom's production manager, admitted receiving a copy of the summons and complaint.

As the above sequence of events demonstrates, Airoom had ample opportunity to avoid the default judgment by filing its answer or appearance. It chose, however, not to use this opportunity, instead relying belatedly, without counsel, on out-of-court negotiations and good-faith attempts to settle the dispute. Although "the law encourages out-of-court settlement of controversies, it is imperative that defendants not disregard their legal rights and obligations. *** Relief under section [2—1401] is available only to those who diligently pursue their legal defenses and remedies in court, not to those who disregard these procedures on the gamble that better results can be obtained through other procedures or at a cheaper cost." (*Abbell v. Munfield* (1979), 76 Ill. App. 3d 384, 388.) When all of the circumstances of this case are viewed in their entirety, there is no doubt that Airoom's dilemma is the result of its own

negligence and indifference to or disregard of the circuit court's process. Had Airoom kept abreast of this litigation, it would have known of the entry of the judgment. Based upon all the facts established in the present case, we conclude that Airoom's petition did not establish any acceptable excuse for its failure to appear in court after summons was duly served on its agent. Accordingly, we hold that the circuit court was correct in concluding that Airoom's petition and supporting affidavits were insufficient because they did not show due diligence in defending this cause.

One of the guiding principles, however, in the administration of section 2—1401 relief is that the petition invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613; *Ellman v. De Ruiter* (1952), 412 Ill. 285, 292; Ill. Ann. Stat., ch. 110, par. 2—1401, Joint Committee Comments (1955), at 603 (Smith-Hurd 1983).) As stated in *Diner's Club, Inc. v. Gronwald* (1976), 43 Ill. App. 3d 164, 168, and *Spencer v. American United Cab Association* (1965), 59 Ill. App. 2d 165, 172, "[t]he power to set aside a default and permit a defendant to have his day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and [for the] furtherance of justice." Because a section 2—1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it a default judgment may be vacated even though the requirement of due diligence has not been satisfied. *American Consulting Association, Inc. v. Spencer* (1981), 100 Ill. App. 3d 917, 923; *Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1019; *George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973, 979.

Airoom has made reference to a number of decisions which have relaxed the due-diligence standard because one party withheld knowledge of some fact from another party. Airoom suggests that this principle should be applied here because the plaintiffs deliberately and secretly: (1) failed to give Airoom notice of the default proceedings and (2) failed to give notice of, or to execute upon, the judgment within 30 days after its entry. Our consideration of the entire record, however, convinces us that this is not a case where the allegedly unfair, unjust, or unconscionable conduct of the plaintiffs softens the rigorous application of the due-diligence standard.

While professional courtesy may arguably require a plaintiff to notify a defendant of either the hearing or his intention to seek a default judgment, the plaintiffs here were under no legal responsibility to provide Airoom with notice. Because no appearance had been entered for Airoom, no notice was required under either the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—1301(d), 2—1302(a)) or the rules of the circuit court of the Eighteenth Judicial Circuit (Rules 6.01, 6.04(a) (1977)). (See *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 913; *Limar-Pinehurst, Inc. v. Welter* (1976), 38 Ill. App. 3d 800, 804.) Accordingly, this alleged breach of professional courtesy on the part of the plaintiffs' counsel is insufficient to constitute unfair, unjust, or unconscionable conduct, and does not justify this court's easing the due-diligence requirement.

Airoom's argument above appears to place both an affirmative obligation upon a plaintiff to constantly apprise a defendant of the proceedings in the circuit court and an ethical obligation upon a plaintiff's counsel to advise an unrepresented defendant of his right to retain an attorney. To impose such obligations, however, would be improper and would ignore the clear mandate of *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467,

wherein this court reaffirmed the principle that "once a court acquires jurisdiction, it is the duty of the litigants to follow the [progress of their own] case." The imposition of such obligations would also undermine the adversarial nature of our legal system. While a liberal construction must be given to the petition to prevent an unjust result (*Electrical Wholesalers, Inc. v. Silverstein* (1977), 47 Ill. App. 3d 689, 692), "the ambit of section [2—1401] relief must not be overbroadened to such an extent that principles of equity and an ordered concept of justice are diluted" (*Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 676-77). We therefore reject Airoom's suggestion that the plaintiffs' failure to advise Airoom, informally or otherwise, of their intent to move for the default is sufficient to invoke the equitable powers of the circuit court.

We also reject Airoom's argument that justice and fairness require the default judgment to be vacated because the plaintiffs did not notify Airoom of the judgment within 30 days of its entry. While the failure to give notice of, or to execute upon, a default judgment within 30 days of its entry may be *a* factor to be considered in determining whether the plaintiff has acted so unfairly as to justify relaxation of the due-diligence standard (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 614; *Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, 719-20; *Falcon Manufacturing Co. v. Nationwide Brokers, Inc.* (1984), 123 Ill. App. 3d 496, 500; *Sidenstricker v. Dobbs* (1982), 110 Ill. App. 3d 620, 624), additional circumstances must exist which would compel the conclusion that the party obtaining the *ex parte* judgment would gain an unfair, unjust, or unconscionable advantage if the judgment were not vacated (*Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 1067; *Westphall v. Trailers, Campers, Campgrounds, Inc.* (1979), 76 Ill.

App. 3d 205, 209; *Hunt v. General Improvements, Inc.* (1977), 48 Ill. App. 3d 421, 424-25; *Houston v. Churchill* (1968), 100 Ill. App. 2d 56, 60-61).

In the present case, however, there are no such circumstances which point to unfair, unjust, or unconscionable conduct on the part of the plaintiffs or their attorney. There is no evidence that the pattern of conduct followed by the plaintiffs' attorney after summons was duly served on Airoom was designed to mislead or lull Airoom into believing the case was proceeding normally while in the meantime obtaining a default judgment. Although the plaintiffs were silent with regard to the entry of the default judgment, there is no evidence that the plaintiffs' attorney fraudulently concealed the entry of the judgment or prevented Airoom from knowing of it by any "trick or contrivance." (*Cf. Ellman v. De Ruiter* (1952), 412 Ill. 285, 289-90 (where plaintiff's counsel willfully concealed the entry of a default judgment until such time as the court lost its power to vacate at the expiration of 30 days); *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 614 (where execution of a default judgment was deliberately delayed for the purpose of keeping knowledge of the judgment from the defendant until the 30-day period had expired).) There is no evidence that the plaintiffs or their attorney agreed to forgo their legal rights and remedies while Airoom attempted to settle the dispute, or that the plaintiffs or their attorney led Airoom to believe that their legal remedies were not being pursued. There is no evidence that Airoom was hindered or prevented by plaintiffs or their attorney from making a defense. In our view, the conduct of the plaintiffs and their attorney does not warrant the conclusion that the circuit court's processes were used to gain an unconscionable advantage, nor does it suggest fraud or fundamental unfairness. Because Airoom has not provided any evidence which would demonstrate unfair, un-

just, or unconscionable behavior, or any indication that the plaintiffs were deceptive in obtaining the default judgment, equitable principles do not require the judgment to be vacated.

Airoom also contends that the circuit court's award of $52,403.05 to the plaintiffs was erroneous because: (1) Airoom was not notified, formally or informally, of the hearing on the assessment of damages and (2) the plaintiffs failed to bring forth sufficient evidence to support their claim for damages. These arguments, however, were not raised as a meritorious defense in Airoom's section 2—1401 petition, out of which this appeal arises. It is well established that matters not presented to or ruled upon by the trial court may not be raised for the first time on appeal. (*Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550; *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313; see *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 911.) Under this circumstance, the issue is deemed waived. However, we will consider it in part in conjunction with the next issue discussed below.

Airoom next contends that the judgment for $52,403.05 was both excessive and unconscionable as the original contract for the room addition was only $16,500. This argument also was not raised in Airoom's section 2—1401 petition. We will, nonetheless, address the merits of it since the record on appeal includes a transcript of the damages hearing.

The record, however, fails to support Airoom's position that the damages awarded in the default judgment were excessive. We noted earlier that at the hearing, the plaintiffs presented the court with a written report by James Zappavigna, a registered architect who inspected the addition on April 19, 1983. After discussing in detail the faults and defects present, the report concluded with

the architect's recommendations. Plaintiff Wayne Smith then testified as to the cost of removal of the addition and the proper installation of a similar one. Smith testified that one contractor estimated the cost to be between $35,000 and $40,000, while a second contractor estimated the work at between $35,000 and $50,000. Although Smith admitted that a precise estimate could not be obtained, since the work would be done on a time-and-materials basis, we believe that the record adequately supports the circuit court's damage award of $50,000, plus costs.

Airoom's contention that the damage award is unconscionable is also unpersuasive. In *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, there was evidence that at an *ex parte* hearing on damages, the plaintiff introduced medical and hospital expenses for a gallbladder operation which had no connection to the injury claimed. In vacating the default judgment, this court reasoned:

> "The mere fact that a defendant is defaulted does not give to the plaintiff a right or claim to the assessment of damages unrelated to liability and, under the circumstances here, it would appear that such an advantage was knowingly and intentionally taken of both defendant and the trial court. Under the *Ellman* doctrine [*Ellman v. De Ruiter* (1952), 412 Ill. 285], we believe that fairness and justice required the exercise of equitable powers to obtain relief from a judgment so obtained." (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 614.)

Similarly, in *Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, there was evidence that at an *ex parte* hearing on damages, the plaintiff introduced an affidavit alleging an amount which did not give credit to the defendant for an offset known to the plaintiff. In vacating the default judgment, the court reasoned that "[s]uch conduct on the part of [the plaintiff] would impugn the integrity of the original lawsuit. See

*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 109 N.E.2d 348." (128 Ill. App. 3d 714, 720.) Unlike the plaintiffs in *Elfman* and *Bonanza International, Inc.,* the plaintiffs here will not gain an unconscionable advantage if the judgment is not vacated. Because Airoom has not provided any evidence which would demonstrate fraud or unconscionable behavior on the part of the plaintiffs in obtaining this damage award, we will assume that the award of damages was correct. Although the award is three times the original cost, the record indicates that to repair the defective structure it will be necessary to remove it and to rebuild it correctly.

A court of review is justified in disturbing the circuit court's decision under section 2—1401 only if the circuit court has abused its discretion. (*Stallworth v. Thomas* (1980), 83 Ill. App. 3d 747, 751.) We have considered all of the circumstances attendant in the instant case, including the conduct of the litigants and of counsel. Given these circumstances, the general principles of equity, and the goals of justice and fairness which underlie section 2—1401, we cannot find that the circuit court abused its discretion in denying Airoom's petition to vacate the default judgment entered against it.

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*

JUSTICE MORAN took no part in the consideration or decision of this case.