**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190257-U

Order filed April 19, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0257 Circuit No. 14-CF-44 |
| | ) | |
| RICHARD A. MOORE, | ) ) | Honorable Amy M. Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:   The circuit court properly dismissed defendant's petition for relief from judgment where the petition failed to set forth facts demonstrating defendant's due diligence.

¶ 2       Defendant, Richard A. Moore, was convicted following a bench trial of aggravated battery. He subsequently filed a petition for relief from judgment, challenging that conviction on a number of grounds. The Will County circuit court dismissed that petition, a judgment that defendant now challenges as erroneous. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant, via indictment, with aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2012)). The indictment alleged that defendant struck Zachary Lofdahl about the body with a metal object on September 5, 2013.[1] The matter proceeded to a bench trial on November 2, 2015.

¶ 5        At trial, Lofdahl testified that he was currently working as a lineman for AT&T. On the date in question, however, he and defendant worked together at Navistar National Harvester (Navistar), a trucking company. Lofdahl and defendant were packing and shipping truck parts that day, and they engaged in an argument over the proper way to pack the parts. The next thing Lofdahl recalled was waking up in the hospital with stitches in his head. Lofdahl had a gash on the side of his head and a swollen eye. He spent four days in the hospital and "was off work" for three months after the incident. Lofdahl denied tripping, falling, or otherwise hitting his head in any sort of accidental fashion.

¶ 6        Others who were working at Navistar on the day in question testified at the trial. Adam Turner testified that after overhearing an argument, he saw defendant throw a 10-pound truck part at Lofdahl. The item struck Lofdahl in the temple, and Lofdahl fell to the ground. When Lofdahl attempted to get back onto his feet, he was unstable. Vernon Foster testified that he saw Lofdahl fall to the ground; as he did, a metal bearing was rolling away from Lofdahl. Foster asked defendant "why did he do it?" but defendant did not respond.

_____

[1]The original indictment alleged that the conduct occurred on September 15, but the State obtained leave to amend the indictment to reflect the correct date, citing a scrivener's error.

¶ 7        Defendant testified that he did not throw anything at Lofdahl. Rather, defendant saw Lofdahl hit his head on a piece of loading equipment. Defendant then overheard Lofdahl tell Foster that they should say defendant threw something at him. Foster agreed.

¶ 8        The court found defendant guilty. On September 21, 2016, the court sentenced defendant to a term of 24 months' probation.

¶ 9        During the pendency of his direct appeal, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2018). In the petition, filed on September 18, 2018, defendant challenged his conviction on three distinct grounds.

¶ 10       First, defendant asserted that he had "newly discovered evidence" in the form of an affidavit from Juan Montoya. In the affidavit, Montoya averred that he was working at Navistar "when [Lofdahl] came back to work." Montoya stated that "[a] while ago" he overheard Lofdahl telling another employee that he had sustained his head injury on September 5, 2013, by hitting his head on a steel cart. Montoya continued: "I do not remember the exact day and time of this conversation but it was after they had terminated [defendant]." Defendant alleged that this new evidence had "the ability to change the outcome of a new trial."

¶ 11       Second, defendant alleged that his conviction had been obtained through the unknowing use of perjury. In support, defendant discussed the testimony of Lofdahl, Turner, and Foster in great detail, alleging a number of instances of purported inconsistencies within their statements.

¶ 12       Finally, defendant alleged that the circuit court had failed to properly apply the correct standard of proof at trial.

¶ 13       The State filed a motion to dismiss, alleging, *inter alia*, that defendant failed to establish due diligence in obtaining Montoya's statement.

3

¶ 14    Defendant filed a response to the State's motion to dismiss. In his response, defendant asserted that Montoya did not know that Lofdahl had pressed charges, or that there was a trial, and therefore "did not think to contact anyone is regards to the statement that he had overheard." Defendant also explained that he had changed his phone number, such that Montoya was unable to contact him. Defendant continued: "It was only when the defendant had contacted Mr. Montoya to see if he would help the defendant work on his car that Mr. Montoya was able to relay the information; which was some time after the original trial."

¶ 15    The circuit court granted the State's motion to dismiss.

¶ 16                              II. ANALYSIS

¶ 17    On appeal, defendant combines the first two points from his section 2-1401 petition into a singular issue. He argues that Montoya's affidavit constituted "newly discovered evidence of perjury." He contends that the affidavit presents a question of fact to be resolved at an evidentiary hearing, and that the circuit court's dismissal was therefore improper.

¶ 18    Section 2-1401 provides a vehicle by which a defendant may "bring facts to the attention of the circuit court which, if known at the time of judgment, would have precluded its entry." *People v. Haynes*, 192 Ill. 2d 437, 463 (2000). A defendant must exercise due diligence in presenting the claim or defense to the court. *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003). "When a petition is based on a claim of newly discovered evidence, it must be shown that the evidence was not known at the time of the original proceeding and 'could not have been discovered by the petitioner with the exercise of reasonable diligence.' " *In re Marriage of Benjamin*, 2017 IL App (1st) 161862, ¶ 19 (quoting *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, ¶ 15). A petitioner bears the burden of establishing his right to relief. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986).

4

¶ 19    In the instant case, defendant failed to allege facts in his petition that demonstrate his due diligence in bringing his claim before the court. The newly discovered evidence sought to be introduced by defendant was Montoya's statement, in which Montoya asserted that he overheard Lofdahl admit to hitting his head on a steel cart on the date of the offense. Defendant was thus obligated to demonstrate why he could not have learned about Montoya's statement prior to his trial.

¶ 20    In his original petition, defendant pled no facts relating to this due diligence requirement. In his response to the State's motion to dismiss, defendant only provided an explanation as to why Montoya did not contact defendant. Montoya did not know that criminal proceedings had been instituted and did not know defendant's new phone number. Defendant did not learn about Montoya's information until he contacted Montoya to ask if Montoya could help him with his car.

¶ 21    Not only do these factual allegations fail to show that defendant could not have discovered Montoya's statement through ordinary diligence, they tend to affirmatively demonstrate that such diligence would have led defendant directly to the new evidence. While Montoya was purportedly unable to contact defendant, defendant clearly had the ability to contact Montoya. Further, it is clear that defendant and Montoya had some sort of existing relationship, given that defendant asked Montoya for help on his car. Obtaining the evidence in question may have been as easy as defendant contacting Montoya some time before his trial.[2]

¶ 22    Defendant contends that his new claim—"newly discovered evidence of perjury"—by definition, could not have been discovered prior to his trial. He argues that "because this petition

_____

[2]While Montoya could not recall the precise date that he overheard Lofdahl's conversation at Navistar, Lofdahl was working elsewhere by the time of defendant's trial. It follows that Montoya overheard the conversation prior to the trial.

5

was based on perjury that occurred at [defendant's] trial, there was no way to discover evidence of perjury until the acts that constituted the perjury actually occurred. Accordingly, any evidence of perjury could only have been collected after the trial." We disagree.

¶ 23   Whether styled as a claim of simple "newly discovered evidence" or a claim of "newly discovered evidence of perjury," defendant's claim turns, at bottom, on the newly discovered evidence in question. Here, the newly discovered fact was Montoya's statement. As explained above, that evidence could have been discovered through the exercise of ordinary diligence. Had it been discovered prior to trial, defendant would have been able to at least attempt to call Montoya as an impeachment witness. "[S]ection 2-1401, is not intended to relieve a litigant of the consequences of his own mistake or negligence." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 38. Defendant cannot avoid the requirements of due diligence simply by recasting his claim as one of perjury, which only became apparent the moment Lofdahl actually testified.

¶ 24                    III. CONCLUSION

¶ 25   The judgment of the circuit court of Will County is affirmed.

¶ 26   Affirmed.