NOTICE
Decision filed 04/01/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230033-U

NO. 5-23-0033

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| SHERMAN MAYS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Union County. |
| | ) | |
| v. | ) | No. 17-LM-31 |
| | ) | |
| DAVID PARKS, | ) | Honorable |
| | ) | William J. Thurston, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held:*  Where a section 2-1401 petitioner failed to present a factual or legal challenge to the circuit court's final judgment, the court's order denying that petition is affirmed.

¶ 2   Sherman Mays filed a forcible entry and detainer action against David Parks, seeking possession of an acre of land with a mobile home. The circuit court awarded Mays possession of the property, but it also awarded Parks money damages. Mays appealed to this court, but his appeal was dismissed due to the untimeliness of his notice of appeal. Mays filed a petition for relief from judgment, which is the subject of the instant appeal. The court denied the petition, and Mays now appeals from the dismissal. Having reviewed the record on appeal, the appellant's brief filed by Mays, and Parks's *pro se* appellee's brief, this court affirms the judgment of the circuit court of Union County.

1

¶ 3                                    BACKGROUND

¶ 4      In August 2017, Mays filed, by counsel, an action against Parks pursuant to the Forcible

Entry and Detainer Act (FED Act) (735 ILCS 5/9-101 *et seq.* (West 2016)). Mays alleged that he

was the owner of the property at 1360 Lime Kiln Road in Anna, Illinois (subject property), and

that on some unspecified date in the past, he and Parks had agreed to an oral month-to-month lease

of the subject property, under which Parks was to pay Mays $640 per month in rent. Mays sought

possession of the subject property and $3870 in unpaid rent. Parks never filed an answer or any

other type of responsive pleading.

¶ 5      Eventually, in October 2017, the circuit court held a bench trial. Mays appeared with

counsel; Parks appeared *pro se*.

¶ 6      At the bench trial, Mays testified that sometime in 2015, Parks contacted him about

purchasing the subject property, which consisted of a double-wide mobile home on approximately

one acre of land. Mays had his attorney prepare a contract for deed. Parks made a down payment

of $9500. Parks requested several modifications to the contract for deed, but he never signed it.

Parks was to make monthly payments of $640, which included amounts to reimburse Mays for

property taxes and insurance, but Parks's payments were sporadic and of varying amounts. Parks

paid $100 in January 2017, but he did not make any subsequent payments. The annual property

taxes were $110, and insurance on the property was $40 per month, Mays testified.

¶ 7      Parks testified at the trial that in August 2014, he gave Mays a deposit of $9500. However,

Parks did not sign the contract for deed because he felt that it did not accurately reflect his

agreement with Mays. He asked Mays for changes in the contract. Parks reimbursed Mays for the

taxes and insurance that Mays had paid. On September 5, 2015, the parties entered into a written

lease agreement. (No lease agreement is in the record on appeal.) Terms of the lease were "[f]ive

2

years, 16 months of payments, from 5-17, and $35 for water—or $35 for water and $44 for insurance." In August 2014, the parties made an oral agreement that Parks would pay Mays for water for two years, after which Mays would build a well on the subject property. Parks spent "at least $12,000" on repairing and remodeling the mobile home. According to Parks, he had made every monthly payment up to January 2017, at which point he stopped paying because Mays had failed to dig the well.

¶ 8    Also at the trial, George Stearns testified on behalf of Parks. Stearns, a neighbor of Parks, testified that in 2014, he and Mays had made an oral agreement that Stearns would continue to provide water from his well to the property that Parks was buying. Their agreement was for a two-year period, until Mays could drill a well for Parks. Mays never drilled the well.

¶ 9    After Stearns had finished testifying, Parks stated that he would have "no problem" paying Mays the unpaid rent if only Mays would dig the well.

¶ 10    A copy of the contract for deed was admitted into evidence at the trial. The contract was dated August 24, 2014; it was signed by Mays but not by Parks. According to the contract, Parks was to purchase the subject property for $35,000, including a $9500 down payment "to be paid by the Purchaser to the Vendor upon execution of this Contract," with the remaining amount to be paid in 60 monthly installments of $517.14. The contract required Parks to pay the county real estate taxes. Mays was to maintain liability insurance on the subject property, and Parks was to reimburse him for the monthly premium. The contract further required Parks to pay Mays an additional $35 per month for 36 months to pay for water usage from Mays, which was drawn from a neighbor's property pursuant to an agreement between Mays and the neighbor. The contract further provided that Mays was to construct a well on the subject property at the end of the 36-month period.

3

¶ 11    At the end of the bench trial, the court reserved ruling in the case and set a hearing in November 2017, giving the parties additional time "to sort this out in a way that's beneficial to [both parties]." In answer to Mays's counsel's queries, the court did find that there was no contract for deed, however, there was "a verbal contract" that Mays would drill a well in exchange for Parks's making a down payment, and Parks relied on that promise to dig a well when he made substantial improvements on the property.

¶ 12    Despite the court's hopes, Mays and Parks did not come to an agreement on the most beneficial way to move forward.

¶ 13    In December 2017, the court entered judgment. The court ordered Parks to vacate the subject property within 14 days and to pay Mays $1000, which represented the unpaid rent claimed by Mays offset by the insurance and property taxes that Parks paid and repairs that Parks made to the subject property. The court also ordered Mays to return the $9500 deposit and awarded Parks $3000 for Mays's failure to drill the well.

¶ 14    In January 2018, Mays filed a motion to modify the judgment pursuant to section 2-1203(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203(a) (West 2016)). Mays argued (1) that the court erred in ordering Mays to return the $9500 down payment and awarding Parks $3000 in damages as a result of Mays's failure to dig the well because (a) Parks did not file an answer, affirmative defense, or counterclaim on which these awards could be based, and (b) Mays was denied due process because he had no notice of the defenses and counterclaims the court *sua sponte* raised on Parks's behalf; (2) that the $3000 award was contrary to the manifest weight of the evidence because no evidence regarding the amount of alleged damages was introduced; and (3) that the $9500 award was contrary to the manifest weight of the evidence because the parties testified as to the existence of a contract for deed.

4

¶ 15    In March 2018, the court held a hearing on Mays's motion to modify the judgment pursuant to section 2-1203(a) of the Code. The record on appeal does not contain any report of proceedings, bystander's report, or agreed statement of facts in regard to this hearing. In the end, the court denied the motion with respect to the manifest-weight arguments; however, the court reserved ruling on the remainder of the motion.

¶ 16    In April 2018, Mays filed, by counsel, a "motion to dismiss as moot." Mays argued that the cause was moot because, on November 29, 2017, the parties had signed a purchase agreement whereby Parks agreed to purchase the subject property from Mays for $10,500, and that this agreement constituted a novation. At the same time, Mays filed, by counsel, a "motion to modify proposed ruling," *i.e.*, a motion to modify the court's March 2018 ruling. Mays reiterated his arguments that Parks had raised no defense or counterclaim to the complaint under the FED Act and that he was denied due process where he had no notice that the court would *sua sponte* raise defenses and counterclaims for Parks.

¶ 17    Also in April 2018—on the same day that Mays filed his motion to dismiss as moot and his motion to modify—the parties appeared in court. The court ordered Mays to deposit $9500 with the court until the case was resolved.

¶ 18    In May 2018, the circuit court, in a docket order, denied the motion to dismiss as moot (filed in April 2018). The court found that the purchase agreement of November 29, 2017, was not a novation, for there was no previously valid agreement that could be replaced by the new contract. The court noted that Mays claimed that the previous valid obligation was an oral contract for deed. The court concluded that under the statute of frauds (740 ILCS 80/0.01 *et seq.* (West 2016)), no such valid agreement could exist.

¶ 19    On August 8, 2018, the circuit court held a hearing on Mays's April 2018 "motion to modify proposed ruling." Mays and his attorney were present; Parks was now represented by an attorney, and he and counsel were present for the hearing. Mays's attorney reiterated his argument that he was denied due process because he had not received any notice of the defenses and counterclaims that the court *sua sponte* raised on Parks's behalf. Parks's attorney responded that Illinois Supreme Court Rule 181 provides that a respondent need not file an answer unless ordered to do so by the court, that when no answer is ordered the allegations in the complaint will be deemed denied, that any defense may be proved as if it were specifically pleaded. See Ill. S. Ct. R. 181(b)(2) (eff. Jan. 1, 2018). Counsel added that section 9-106 of the FED Act provides that a respondent may file such counterclaims as are "germane" to the proceeding. See 735 ILCS 5/9-106 (West 2018). The court denied Mays's motion, finding that Parks, who had proceeded *pro se* at the bench trial, had orally raised affirmative defenses and counterclaims during the bench trial, and that Mays, who was represented by counsel at the bench trial, did not object or request a continuance. The court concluded by stating that its order entered in December 2017 remained in full force and effect, and that its order entered in August 2018 was a final and appealable order.

¶ 20    On September 10, 2018, Mays filed a notice of appeal from the circuit court's orders entered in December 2017, April 2018, and May 2018. The appeal was No. 5-18-0432.

¶ 21    While the appeal in No. 5-18-0432 was pending, Mays filed the pleading that is the subject of the instant appeal. It was on August 10, 2020, that Mays filed, by his attorney, a petition for relief from judgment, pursuant to section 2-1401 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-1401 (West 2020)). In that petition, Mays (again) reiterated that Parks never pleaded a counterclaim, or filed any pleading that could be liberally construed so as to state a cause of action upon which a recovery might be had. According to Mays, he had a meritorious defense:

he was entitled to notice, but did not receive notice, of the counterclaim that led to the court's granting relief to Parks. In the alternative, Mays asserted that the judgment was "void or voidable." "Because [Parks] did not plead nor serve [Mays] with [c]ounterclaims[,] the [c]ourt lacked personal jurisdiction over [Mays] with respect to [Parks's] unfiled [c]ounterclaims." In his prayer for relief, Mays sought to vacate the court's order of December 20, 2017, or to modify that order so as to "remove all damages against [Mays]." Furthermore, Mays sought an order directing the clerk of the circuit court to release to him, immediately, Mays's "teller's check." Mays mailed notice to Parks.

¶ 22    Proceedings on this section 2-1401 petition were stayed, on the motion of Mays, during the pendency of the appeal in No. 5-18-0432.

¶ 23    Ultimately, in September 2022, this court issued a summary order that found that this court lacked jurisdiction over the appeal, due to an untimely notice of appeal. Accordingly, this court dismissed the appeal. *Mays v. Parks*, No. 5-18-0432 (Sept. 26, 2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 24    On November 9, 2022, Mays and his attorney appeared before the court. Parks was not present; he was imprisoned in the Illinois Department of Corrections. Mays's attorney argued in favor of his section 2-1401 petition (which is the subject of the instant appeal). To begin with, the attorney noted that the case began with Mays's complaint for forcible entry and detainer, and that Parks never filed an answer, affirmative defenses, or counterclaims. The court entered judgment in favor of Parks in the amount of $11,500. The attorney asserted that "the Code of Civil Procedure requires—it requires claims to be pled in specific ways. It requires counterclaims to be pled in specific ways. *** That did not happen here. [Mays] was, instead, surprised by the judgment entered." The attorney continued: "So the problem is that my client hasn't had an opportunity to

7

have notice, have process, present defenses, present the evidence that would have been appropriate. I mean, essentially, what we have here was, I think, a failure of the adversarial process." Finally, the attorney argued that Parks's failure to file any type of pleading with a relevant prayer for relief "renders an order granting such relief void."

¶ 25    The court reserved ruling on the section 2-1401 petition. "We are getting dangerously close to arguing the facts of the case again," the court said. "And your motion was premised on a procedural issue with the pleadings in effect." The court explained that it would research "the pleading issue" and would determine whether that issue "would cause the [c]ourt to change any portion of its ruling."

¶ 26    A few weeks later, in December 2022, the circuit court entered an order that denied Mays's section 2-1401 petition. The court stated that nothing raised in that petition "constitutes new facts which would have precluded judgement [*sic*] in the original case, no meritorious defense or claim, no exercise of due diligence in either bringing the claims in the original action, or in bringing the [section] 2-1401 petition." To the contrary, the court stated, the issues raised by Mays in his petition were "all matters that were, or could have been, addressed in the original action, or the appeal process."

¶ 27    By his attorney, Mays filed a timely notice of appeal.

¶ 28                                   ANALYSIS

¶ 29    This appeal is from the circuit court's order denying Mays's petition for relief from judgment, a petition that was filed by Mays pursuant to section 2-1401 of the Procedure Code. A reviewing court will reverse the circuit court's ruling on such a petition only if it constitutes an abuse of discretion. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221 (1986).

8

¶ 30    Section 2-1401 provides a comprehensive statutory procedure that authorizes a circuit court to vacate or modify a final order or judgment, entered in either civil or criminal proceedings, when more than 30 days have elapsed since its entry. 735 ILCS 5/2-1401(a) (West 2020); *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. A petition under section 2-1401 must be filed no later than two years after the entry of the order or judgment, excluding any time that the defendant was under legal disability or duress or the ground for relief was fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2020).

¶ 31    Section 2-1401 enables a party to bring to the circuit court's attention facts that, if known by the court at the time it entered the order of judgment, would have prevented its entry. *Kalan v. Palast*, 220 Ill. App. 3d 805, 809 (1991). To obtain relief under section 2-1401, a petitioner must set forth specific factual allegations supporting each of three elements: (1) the existence of a meritorious defense or claim in the original action; (2) due diligence in presenting that claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *Airoom*, 114 Ill. 2d at 220-21. However, "a section 2-1401 petition is not to be used as a device to relitigate issues already decided or to put in issue matters which have previously been or could have been adjudicated." *In re Marriage of Halas*, 173 Ill. App. 3d 218, 223 (1988) (this restriction reflects "the strong judicial policy favoring finality of judgments"); see also *Stolfo v. KinderCare Learning Centers, Inc.*, 2016 IL App (1st) 142396, ¶ 29. "The quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence." *Airoom*, 114 Ill. 2d at 221. "Whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented," and therefore, a reviewing court will reverse the circuit court's ruling on the petition only if it constitutes an abuse of discretion. *Id.*

9

¶ 32    While a section 2-1401 petition is ordinarily used to bring previously-unknown and potentially outcome-altering facts to the circuit court's attention, a section 2-1401 petition may also be used to challenge a purportedly defective order or judgment for legal reasons. That is, it may be used to raise a purely legal challenge to a final order or judgment by alleging that it is void under subsection (f) of section 2-1401. *Warren County*, 2015 IL 117783, ¶¶ 42, 47 (discussing *People v. Vincent*, 226 Ill. 2d 1 (2007)). Subsection (f) reads: "Nothing contained in this [s]ection affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2-1401(f) (West 2020). An order or judgment is void for purposes of section 2-1401 only if (1) the order or judgment was entered by a court that lacked personal or subject-matter jurisdiction, or (2) the order or judgment was based on a statute that is facially unconstitutional and void *ab initio*. *People v. Price*, 2016 IL 118613, ¶ 31. When a section 2-1401 petition presents a purely legal challenge to an order or judgment, such as a claim that the underlying order or judgment is void, the standard of review is *de novo*. *Warren County*, 2015 IL 117783, ¶ 47; *Askew Insurance Group, LLC v. AZM Group, Inc.*, 2020 IL App (1st) 190179, ¶ 21.

¶ 33    A proceeding under section 2-1401 is an independent, separate action; it is not a continuation of the proceeding in which the order of judgment was entered. 735 ILCS 5/2-1401(b) (West 2020). The petition must be supported by an affidavit or other appropriate showing for matters not in the record. *Id.*

¶ 34    Here, Mays used his section 2-1401 petition to present both a factual challenge and a legal challenge to the final order or judgment. In regard to the factual challenge, Mays failed to set forth *any* specific factual allegations at all. Instead, he complained (again) that Parks never had filed an answer or a counterclaim to Mays's complaint. This is a fact regarding the procedural history of the case. It is not a previously-unknown fact relating to any of the three elements that must be

10

established under section 2-1401. *Airoom*, 114 Ill. 2d at 220-21. It is not a previously-unknown fact relating to the factual substance of this case. Mays's factual challenge to the final order or judgment fails completely.

¶ 35　As for the legal challenge to the final order of judgment, Mays did not state anything to suggest that the order of judgment is void under subsection (f) of section 2-1401. In his section 2-1401 petition, Mays asserted that the order or judgment was "void *or voidable*" (emphasis added) because Parks did not plead or counterclaim, or serve Mays with counterclaims, resulting in the circuit court's lack of "personal jurisdiction over [Mays] with respect to [Parks's] unfiled [c]ounterclaims." This court notes that the question is whether the final judgment is void, not whether it is "void or voidable." As noted *supra*, an order or judgment is void for purposes of section 2-1401 if, *inter alia*, the order or judgment was entered by a court that lacked personal jurisdiction. *Price*, 2016 IL 118613, ¶ 31. Here, the circuit court had personal jurisdiction over Mays. "Personal jurisdiction is the court's power 'to bring a person into its adjudicative process.' " *In re M.W.*, 232 Ill. 2d 408, 415 (2009) (citing Black's Law Dictionary 870 (8th ed. 2004)). Mays was brought into the court's adjudicative process when he first filed his FED complaint.

¶ 36　　　　　　　　　　　　　CONCLUSION

¶ 37　In his section 2-1401 petition, Mays failed to present a factual challenge, and in the alternative a purely legal challenge, to the circuit court's final judgment. He did not, for example, bring to the court's attention any previously-unknown, potentially outcome-altering facts. Instead, he attempted to use his section 2-1401 petition to relitigate that which had already been decided in the circuit court. Accordingly, the judgment denying his section 2-1401 petition is affirmed.


¶ 38　Affirmed.