JAMES CAMPBELL *et al.*, as Coadm'rs for the Estate of Ronald J. Campbell, Deceased, Plaintiffs-Appellees, v. COLIN F. WHITE, Defendant-Appellant.

Fourth District   No. 4—89—0088

Opinion filed August 31, 1989.—Rehearing denied September 26, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Scott D. Spooner, Special Assistant Attorney General, of counsel), for appellant.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and James D. Cottrell, of counsel), for appellees.

JUSTICE SPITZ delivered the opinion of the court:
This is an appeal by defendant Colin F. White from an order of the circuit court of Champaign County denying defendant's motion

to vacate a default judgment previously granted in favor of plaintiffs James and Lois Campbell, coadministrators of the estate of Ronald J. Campbell, deceased. Plaintiffs filed suit against defendant on April 10, 1987. The complaint sought damages for the wrongful death of plaintiffs' son allegedly resulting from a collision involving a police car operated by defendant. It is alleged that, at all times relevant to the complaint, defendant is an Illinois State Police officer. The complaint is framed in two counts, negligence and wilful and wanton misconduct. Defendant was personally served with a copy of the complaint on April 21, 1987.

No answer or appearance for defendant being filed in the circuit court, plaintiffs filed a motion requesting an order of default and asking the court to set a date for prove up of damages. On July 21, 1987, plaintiffs' motion for default as to liability was allowed.

The prove up was conducted before a jury on December 10, 1987. As a result of the prove up, the jury assessed damages against defendant as follows: $125,000 for Lois Campbell, $125,000 for James Campbell, $50,000 for Robin Campbell, and $10,000 for decedent's estate. After excusing the jurors, the trial court limited the damages award to the estate to $4,958.10 and entered judgments against defendant in the total amount of $304,958.10 plus court costs.

On December 14, 1987, plaintiffs filed a notice of entry of judgment in which it was certified that a copy of the notice was mailed to defendant and attorney Joseph S. Miller, special assistant Attorney General, on December 11, 1987. On January 4, 1988, defendant, by Miller, filed a motion to vacate the default judgment. The motion recited the default occurred without "lack of diligence, fault or neglect on part of defendant and failure to answer complaint was the result of excusable neglect on part of Defendant's Attorney." The motion further recites defendant has a meritorious defense in that defendant was without fault under the circumstances surrounding the alleged occurrence. In addition, defendant filed an answer to the complaint on January 4, 1988. On January 12, 1988, plaintiffs gave notice of the discovery depositions of defendant and Miller which notice was amended on January 21, 1988, to commence said depositions on March 4, 1988. Thereafter, on February 24, 1988, Regina Haasis and Scott D. Spooner, assistant Attorney Generals, entered their appearances.

The discovery depositions were conducted on March 4, 1988, and copies of the transcripts and exhibits thereto were filed in the circuit court. In support of their motion to vacate, affidavits of defendant

and Miller were also filed.

Defendant's affidavit states as follows:

"1. That I am of legal age and would be competent to testify to the matters and things set forth herein if called as a witness in this cause.

2. That I am currently employed by the Illinois State Police as a State Trooper and was so-employed at all times referenced in the instant affidavit.

3. That I am the defendant in the case at bar, as well as in a related proceeding currently pending before the United States District Court for the Central District of Illinois (Danville Division) which is known and referred to as *Campbell v. White*, No. 86—2161.

4. That I received a letter from Joseph S. Miller, Special Assistant Attorney General, dated September 23, 1986 which informed me that he had been assigned to defend me in the aforementioned civil action in federal court.

5. That other than meeting with Mr. Miller for approximately five (5) minutes prior to my deposition on December 3, 1986 (in the federal case) I have never had an opportunity to discuss this case with my appointed counsel.

6. That on April 21, 1987 I was served with a summons and complaint in the case at bar.

7. That after I was served with process, I called Attorney Miller at his law office in Springfield and was advised that I should send him the aforesaid summons and complaint.

8. That between April 21, 1987, and March 4, 1988 (the date on which I was once again deposed by counsel for plaintiffs herein) I was never able to speak with Attorney Miller regarding this case, despite repeated attempts to do so.

9. That the only correspondence which I received from Attorney Miller between April 21, 1987 and March 4, 1988 was a letter with attached interrogatories in the aforementioned federal proceeding which was sent to me on September 16, 1987.

10. That upon receipt of the aforesaid interrogatories I attempted to call Attorney Miller between five (5) and ten (10) times during September, 1987.

11. That the only person I was ever able to speak with was a secretary employed at Attorney Miller's law office.

12. That I was never advised that a default was entered against me on July 21, 1987.

13. That I was never advised that a jury verdict in the amount of $304,928.57 [*sic*] was entered against me on December 10, 1987.

14. That I was never advised that Attorney Miller had filed a motion to vacate the aforesaid default judgment on January 4, 1988.

15. That after being served with summons on April 21, 1987 the only other information which I received regarding the instant case was on December 14, 1987, when I received notice of entry of judgment.

16. That between December 14, 1987 and December 25, 1987 I attempted to telephone Attorney Miller at least fifteen (15) times, but to no avail.

17. That until my deposition was given on March 4, 1988 I never saw any of the correspondence which passed between Attorney Miller and counsel for plaintiffs dated June 4, 1987, April 28, 1987, September 18, 1987, November 16, 1987 and December 14, 1987, all of which reference and discuss the case at bar.

18. That the instant case and the aforementioned federal proceeding are the only reasons and/or bases for any contact between Attorney Miller and I.

19. That I am convinced that I have a defense to the merits of plaintiffs' case herein, inasmuch as I was following standard procedure in conducting a covert pursuit of the decedent on the evening of May 25, 1985, and considering that my failure to operate the police vehicle's oscillating lights was not the proximate cause of the decedent's death herein."

Miller's affidavit stated:

"1. That I am of legal age and would be competent to testify to the matters and things set forth herein if called as a witness in this cause.

2. That I am currently employed as an attorney at law in private practice in Springfield, Illinois, and was so-employed at all times referenced in the instant affidavit.

3. That at all times referenced herein I served as a Special Assistant Attorney General for the Illinois Attorney General's Office and was, among other things, responsible for conducting the defense in a case known and referred to as *Campbell v. White*, United States District Court for the Central District of Illinois (Danville Division), No. 86—2161.

4. That sometime after April 21, 1987 I received from

Trooper Colin F. White the original of a summons and a copy of the complaint in the case at bar.

5. That through inadvertence I failed to report the instant state court action to the Illinois Attorney General's Office, and I was therefore in technical violation of that Office's rule that Special Assistant Attorneys General handle only those cases which have been assigned to them.

6. That I have never received a formal assignment from the Illinois Attorney General's Office to represent Trooper Colin F. White in the case at bar; nevertheless, I advised Trooper White on April 21, 1987 that I would be conducting the defense herein.

7. That I have never met with my client, Trooper Colin F. White, at any time during the course of the instant state court litigation.

8. That I am aware that on several occasions Trooper White has attempted to speak with me via the telephone regarding this case.

9. That after April 21, 1987 the only correspondence which passed between myself and Trooper White was a September 16, 1987 letter from me to which I had attached interrogatories in the aforementioned federal proceeding.

10. That I have never received a motion for default from plaintiffs' representative in this cause, although I frankly admit that I have been advised via correspondence that my opponent herein intended to seek such a remedy.

11. That I was never sent a notice of hearing on either the motion for default and/or the damages' prove-up in this cause, although I was advised via a November 16, 1987 letter from plaintiffs' representative that I would be sent such a notice.

12. That notwithstanding the above, the chief reason for my lack of diligence in this cause is an ongoing problem with alcohol which I have been attempting to resolve since approximately August of 1987.

13. That efforts to remedy my alcoholism problem have included participation in an Alcoholics Anonymous program through which I have been partially successful in controlling my drinking.

14. That on or about December 1, 1987 I relapsed into alcoholism for a period of two (2) to three (3) weeks.

15. That the case at bar and the aforementioned federal proceeding are the only bases for my contact with Trooper

Colin F. White.

16. That I am convinced that Trooper White has a defense to the merits of this cause, inasmuch as he was following accepted procedure in conducting a covert pursuit of the decedent on the evening of May 25, 1985, and considering that his failure to operate a police vehicle's oscillating light was not, in my view, the proximate cause of the decedent's death herein."

In his discovery deposition, defendant testified that when the Federal suit was first filed (Campbell v. White (U.S. Dist. Ct. C.D. Ill.), No. 86—2161) he received a letter from the Attorney General's office advising that they would represent him and providing him with a contact person. He retained this letter in his files at all times. However, after filing of the instant suit and at all times thereafter until service of notice of default, defendant did not attempt to reach his contact person.

Defendant testified that when he was served with the summons in this cause he contacted Miller by phone and spoke with him. He was told at that time that Miller would be defending him. Thereafter on approximately September 16, 1987, White received correspondence from Miller which transmitted interrogatories propounded by the plaintiffs in the Federal case. In response thereto, he made several telephone calls to Miller's office to request he be given a transcript of his deposition in the Federal case to facilitate answering the interrogatories. Defendant testified he made 5 to 10 calls. He indicated that in all of his calls to Miller's office, he talked to Miller's secretary and that Miller did not return any of the calls. Defendant did not receive a report from anyone as to the status of the Champaign County case. He further testified he did not make inquiry of anyone concerning the status of the case.

Defendant did not write to Miller anytime prior to the entry of default judgment on December 10, 1987, and his only correspondence concerning either of the cases was Miller's September 16, 1987, letter transmitting interrogatories. Defendant did not make any attempts to go to Miller's office in Springfield. Defendant concluded that if it was important the attorney would call him back. Defendant did not call his contact in the Attorney General's office or make any inquiry of the Attorney General's office concerning the status of the case. Defendant made no attempt to have different counsel assigned. Defendant made no inquiry through his superiors at the State Police as to the status of his case. Letters sent from plaintiffs' attorney to Miller were not forwarded to defendant. Defendant stated that when he received the notice of entry of judgment he called Miller's office

about 15 times prior to Christmas. When Miller did not return his calls, defendant called and reached his contact person at the Attorney General's office in January of 1988.

In his discovery deposition, Miller testified he recollected the telephone call from defendant notifying him of the summons and complaint. He testified he had his secretary call defendant to request a copy of the pleadings and a copy was received shortly thereafter. He did not recall precisely, but he probably told defendant he would be defending his case. The Federal case had been assigned to him. His recollection of the telephone conversation with defendant is that defendant advised Miller he had received a complaint and Miller advised defendant that the previous complaint had been dismissed. Miller does not recall the complaint in defendant's possession being identified as a Champaign County case. After receiving the summons and complaint, Miller does not recall any conversations with defendant concerning the fact this was a new suit and he had no subsequent conversations with defendant in which Miller advised defendant that Miller would be defending the case on defendant's behalf. He did not recall if there were further conversations with defendant after receiving the summons and complaint. He also did not recall any further written communications from defendant until subsequent to the entry of default judgment on December 10, 1987. Miller testified he recalled his secretary mentioning on one occasion that White had called. In preparing for his deposition, he checked his telephone records and did not recall seeing any messages.

Plaintiffs' attorney called Miller's office on June 4, 1987, and sent a follow-up letter to Miller advising that the defendant was in default in the case. On August 28, 1987, plaintiffs' attorney again wrote Miller advising him that a default order had been entered against defendant in the circuit court and that plaintiffs understood the matter to be set for prove up in the month of October. On September 18, 1987, plaintiffs' attorney again wrote to Miller once again reminding him the defendant was found to be in default in the instant case. Miller did not send copies of these letters to defendant and sent copies to the Attorney General's office only the week prior to his deposition.

Miller testified that during the time from the filing of suit until December 10, 1987, he was actively practicing law in the State of Illinois. During that time he was not outside the State on business or on vacation for any extended period of time. He further testified that he had a trial and other matters scheduled for the day of December 10, 1987. Prior to December 10, 1987, he did not try to con-

tact plaintiffs' counsel's office to request an extension of time and did not file any pleadings requesting such an extension. He testified he decided to do other legal work rather than do the work necessary to prepare an answer or entry of appearance in the instant case. He agreed this was probably inappropriate. Based on a letter he received from plaintiffs' attorney on November 23, Miller believed he had time to prepare and file an answer and that he would receive notice of the prove up for damages which the letter indicates would be scheduled by the secretary of plaintiffs' attorney. Miller received no notice of the prove up.

Apparently Miller had some difficulty with alcohol during a portion of the period in question. He abstained from alcohol in excess of eight weeks, but had a relapse in early December of 1987. Nevertheless, Miller had two court appearances set on December 10. One was a case in which he represented a client in a two-day jury trial. The other matter was continued because of the ongoing trial. Miller's period of abstinence was from approximately September 17, 1987, until early December 1987.

A memorandum of law was filed by defendant, and plaintiffs moved to strike the portions of the affidavits of defendant and Miller referring to their considering the failure to operate the police vehicle's oscillating lights as not being the proximate cause of decedent's death. On May 19, 1988, arguments of counsel were heard and the matter was taken under advisement. On January 18, 1989, the trial court entered an order granting the motion to strike the portion of the affidavits of White and Miller which stated legal conclusions rather than information to which they could competently testify. The order also denied the motion to vacate the default judgment. The trial court reasoned that the conduct of Miller could not be excused, the defendant was not diligent in protecting his own interests by monitoring the status of the case, and if the default judgment was vacated, plaintiffs would be subject to the hardship of a trial after they had already participated in an emotionally taxing prove up of damages.

■ Before proceeding to the merits of the appeal, this court must consider a motion taken with the case. Plaintiffs moved to strike two portions of defendant's brief. The first portion is a reference to a stipulation filed in the Federal case concerning the circumstances of decedent's death. The stipulation itself has not been made part of the record on appeal. Defendant's brief contains a footnote suggesting the court take judicial notice of the stipulation. The record does not indicate the trial court was aware of this stipulation or

took judicial notice of it, although the trial court was advised of and did refer to the Federal litigation in general. Furthermore, although the stipulation itself was not before the trial court, in arguing the existence of a meritorious defense to the judge, defendant's attorney does recite the facts essentially set forth in the stipulation without objection from plaintiffs. In addition, the complaint alleges defendant was an Illinois State Police officer operating a State police car when he struck the decedent and in so operating the police car was negligent (count I) or guilty of wilful and wanton misconduct (count II). From the allegations of negligence and wilful and wanton misconduct, the court understands it is alleged defendant operated the police car in pursuit of a possible traffic law violator without turning on the oscillating lights and traveling at a high rate of speed, possibly in excess of 100 miles per hour, on an interstate highway during hours of darkness.

The second portion of defendant's brief which plaintiffs would have this court strike is the argument of whether sovereign immunity or public official immunity applies to this case. Plaintiffs contend this issue cannot be asserted on appeal because it was not raised in the trial court. Obviously whether a defendant has waived an argument for purposes of appeal should be addressed on the merits. Both briefs address the question. Therefore, as to this second portion of the defendant's brief, plaintiffs' motion to strike is denied, but regarding the stipulation, the motion to strike is allowed.

■■ ■ The first issue to consider is whether substantial justice requires the default judgment be vacated. Default judgment is a drastic remedy which is not encouraged and should be employed with great caution and only as a last resort. (*Raimondo v. Pavkovic* (1982), 107 Ill. App. 3d 226, 437 N.E.2d 712.) Motions to vacate filed within 30 days of the entry of a default judgment are governed by section 2—1301(e) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(e)). A section 2—1301(e) motion need not allege as grounds for vacating the default judgment that defendant has a meritorious defense or reasonable excuse for failing to assert the defense in a timely manner. (*Plantaric v. Michaels* (1981), 98 Ill. App. 3d 154, 424 N.E.2d 64.) Such grounds must, however, be alleged to support a section 2—1401 petition to vacate. (*Elliot Construction Corp. v. Zahn* (1968), 99 Ill. App. 2d 112, 241 N.E.2d 129.) While both of these cases refer to predecessor statutes contained in the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 1 *et seq.*), the standard remains the same for the sections now reenacted in the Code.

■ As *Plantaric* points out, the question on appeal is not whether the trial court committed an abuse of discretion, but whether substantial justice has been done between the parties under the circumstances of the case. (See also *Difanis v. Martin-Trigona* (1979), 73 Ill. App. 3d 352, 391 N.E.2d 1067.) In determining whether substantial justice has been done, a number of factors are to be considered. These factors include whether plaintiff is a resident of Illinois, the severity of the penalty to defendant as a result of the default judgment, and the attendant hardship on plaintiff if plaintiff is required to proceed to a trial on the merits. (*Dalton v. Blanford* (1978), 67 Ill. App. 3d 91, 383 N.E.2d 806.) While the moving party need not allege a meritorious defense and reasonable excuse for delay, the existence of a meritorious defense and due diligence on the part of the moving party may be considered in determining what is substantial justice in the context of the case. *Plantaric*, 98 Ill. App. 3d 154, 424 N.E.2d 64.

Plaintiffs cite several cases for the proposition that if defendant is negligent in allowing the entry of a default judgment, the default judgment ordinarily will not be set aside even if there is a meritorious defense. Three of these cases, however, were decided pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72), the predecessor to section 2—1401 (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). (*Sora Loan Corp. v. Shlifka* (1971), 2 Ill. App. 3d 137, 276 N.E.2d 85; *Elliot*, 99 Ill. App. 2d 112, 241 N.E.2d 129; *Trobiani v. Racienda* (1968), 95 Ill. App. 2d 228, 238 N.E.2d 177.) The fourth, *Schultz v. Meiselbar* (1892), 144 Ill. 26, 32 N.E. 550, relies on a standard which no longer applies to motions to vacate defaults made within 30 days of judgment pursuant to section 2—1301(e). Under section 2—1301(e), lack of diligence is only a factor and will not alone require denial of the motion. In considering this factor, it seems appropriate, as plaintiffs suggest, that the attorney's negligence is chargeable to the party, even though all the cases cited by plaintiffs are section 72 cases and one, *Bridson v. Maywood Cab Co.* (1967), 79 Ill. App. 2d 295, 224 N.E.2d 572, is published in abstract only. *Colletti v. Schrieffer's Motor Service, Inc.* (1962), 38 Ill. App. 2d 128, 186 N.E.2d 659; *Lamoreaux v. Havranek* (1960), 25 Ill. App. 2d 51, 165 N.E.2d 547.

■ The record indicates that Miller filed no pleading in this case until after judgment was entered when the motion to vacate the judgment was filed. It is apparent that the plaintiff did have some ongoing correspondence with Miller during the period of time prior to the default judgment being entered and the prove up being made

but it does not show that Miller ever entered his appearance for the defendant. Likewise, the record shows from the affidavit of Miller he had not notified the Attorney General's office, had not complied with their policy in notifying that office of the instant proceeding, and was not authorized pursuant to the Attorney General's office procedures to represent the defendant in the State case. Although the plaintiffs' attorney corresponded with Miller, they also were aware that there was no entry of appearance by Miller on behalf of defendant and no notices were given to defendant.

It was not unreasonable for the defendant to think Miller represented him in this case nor was he negligent in the selection. Although it is argued the defendant ignored the status of the proceeding, it is clear that after the receipt of the order for judgment, he immediately took action.

The major emphasis of the briefs of the parties is focused on whether defendant has a meritorious defense. Plaintiffs complain that defendant's meritorious defense is merely that defendant did not act negligently or wilfully and wantonly. Defendant further contends that public official immunity bars the plaintiffs' action against defendant.

In defendant's brief, the defendant points to this court's recent decision in *Oppe v. State of Missouri* (1988), 171 Ill. App. 3d 491, 525 N.E.2d 1189, *cert. denied* (1988), 122 Ill. 2d 579, 530 N.E.2d 250. In reference to *Oppe's* decision concerning subject-matter jurisdiction, defendant's brief quotes language in *Oppe* not only relating to subject-matter jurisdiction, but to public official immunity as well.

■ Clearly public official immunity has absolutely nothing to do with subject-matter jurisdiction. Subject-matter jurisdiction refers to the court's right to hear and determine the general class of causes of action into which the instant cause fits, and as applied to a particular controversy, it is the right to hear that controversy. (*Sweitzer v. Industrial Comm'n* (1946), 394 Ill. 141, 68 N.E.2d 290.) The lack of subject-matter jurisdiction can be raised at any time, in any court, in a direct attack on a judgment or in a collateral attack. *Dorr-Wood, Ltd. v. Department of Public Health* (1981), 99 Ill. App. 3d 170, 425 N.E.2d 499.

■ Plaintiffs argue public official immunity is an affirmative defense which, if not raised, is waived. The United States Supreme Court has stated that public official immunity of Federal employees is an affirmative defense. (*Harlow v. Fitzgerald* (1982), 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727.) Certainly, such an immunity, if properly asserted, would bar the action against defendant. *Fulk v.*

*Roberts* (1987), 164 Ill. App. 3d 194, 517 N.E.2d 1098.

██ ██ Defense to jurisdiction of the subject matter or in abatement or in bar may be pleaded together without waiving any of these defenses although defenses to subject-matter jurisdiction and abatement may be tried first. Affirmative defenses which, if not expressly stated, would surprise the opposing party must be plainly set forth in the responsive pleading of the party asserting the defense. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—613(c), (d).) Immunity is not listed among the examples of affirmative defenses in section 2—613(d). However, an affirmative defense is a defense which gives color to an opponent's claim but then asserts new matter which apparently defeats the claim. *Zieger v. Manhattan Coffee Co.* (1983), 112 Ill. App. 3d 518, 445 N.E.2d 844.

██ Certainly defendant has not filed a responsive pleading and therefore could not have raised any such defense. Plaintiffs' real argument is that defendant failed to raise public official immunity as a possible meritorious defense before the trial court when asking that court to vacate the default judgment. Plaintiffs correctly state that if a party appealing from an order of the circuit court asserts a new theory for reversal which has never been presented to the circuit court for consideration, the reviewing court will not consider that issue on appeal. *Brown v. Lober* (1979), 75 Ill. 2d 547, 389 N.E.2d 1188.

In any event, this court need not decide whether, under the circumstances of this case, defendant is immune under the common law doctrine of public official immunity, but only if defendant arguably has a meritorious defense. And then that is only one factor to consider in determining whether substantial justice has been done between the parties by the trial court's refusal to vacate the default judgment.

██ In arguing the existence of a meritorious defense to the judge, defendant's attorney does recite the facts as essentially set forth in the stipulation in the Federal court without objection from the plaintiffs. Counsel further states defendant was following accepted procedure and exercising discretion so as not to endanger other motorists traveling on the highway. Since exercise of discretion is traditionally one of the factors used in determining the propriety of public officials immunity (see *Oppe*, 171 Ill. App. 3d 491, 525 N.E.2d 1189), it seems defendant has raised the question sufficiently to avoid waiver on appeal although the magic words "public official immunity" were never uttered.

Here, plaintiffs are Illinois residents, although one of their wit-

nesses, Christa Korbus, lives in Austin, Texas. The trial court's decision relied mainly on two points: (1) the lack of diligence, not only of Miller, but also of defendant in maintaining an awareness of the status of the case; and (2) the fact that plaintiffs would be subjected to a second, emotionally draining hearing.

■■ We note that emotional distress, anxiety, embarrassment, humiliation, expense, annoyance, and inconvenience are not actionable special damages which form the basis for actions in malicious prosecution. (*Savage v. Seed* (1980), 81 Ill. App. 3d 744, 401 N.E.2d 984; *Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 351 N.E.2d 285.) The obvious reason is that litigation naturally involves such emotions. Merely because the plaintiffs in this case will be faced with a second, emotionally draining hearing is not a sufficient basis alone for denying the motion to vacate.

■■ The issue of jurisdiction, unlike the issue of public official immunity, not only forms the basis of an arguably meritorious defense, but since the question of subject-matter jurisdiction may be raised at any time, in any court, the question of subject-matter jurisdiction is properly raised here even though it was not considered in the trial court, and the question may be decided on the merits if there are sufficient facts in the record to make a determination.

In *Oppe*, this court decided that a suit against the Illinois Department of Law Enforcement and individual State troopers to recover damages for injuries resulting from a collision following a high-speed chase of an escapee from a Missouri prison must be brought in the Court of Claims. The plaintiffs attempt to avoid the same result here by relying on *Kaiser v. Emrich* (1980), 84 Ill. App. 3d 775, 406 N.E.2d 207, and *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 475 N.E.2d 1035.

*Kaiser* decided a suit against a police officer involved in an intersection collision while driving a patrol car could be brought in the circuit court. In another automobile accident case, the *Bartholomew* court, after determining the defendant was not an employee of the State of Illinois, discussed the *Kaiser* decision at length. The *Bartholomew* court indicated that the statute relied on in *Kaiser* (Ill. Rev. Stat. 1977, ch. 127, par. 35.9(m) (now Ill. Rev. Stat. 1987, ch. 127, par. 63b4(k))) was not intended to have a jurisdictional effect and noted that nongovernmental activities forming the basis of allegations of negligence need not be asserted in the Court of Claims. A police officer driving in hot pursuit of a violator of the law is clearly exercising a uniquely governmental function.

■■ In *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 716, 498

N.E.2d 267, 270, this court discussed the standards for determining whether the circuit court had subject-matter jurisdiction of an action against a former program coordinator at Southern Illinois University or whether the cause must be heard in the Court of Claims:

> "To summarize, we believe that where, as here, there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee. As such, the claim involves actions which may be attributed to the State."

As the *Robb* opinion discussed, an action seeking monetary damages for a past harm which has the potential to control actions of the State or to subject the State to liability must be brought in the Court of Claims.

■ In the case at bar, even though it is not alleged defendant was acting beyond the scope of his authority, the record does not contain sufficient facts from which this court can determine whether defendant was, in fact, acting outside the scope of his authority or whether a policy exists within the Department of Law Enforcement concerning high-speed pursuit without oscillating lights being activated, as defendant suggests, such that a policy of the State would be inhibited by an adverse ruling against defendant herein. In any event, even though there are not sufficient facts in the record from which this court can determine whether the circuit court has subject-matter jurisdiction of this case, substantial justice requires that the default judgment be vacated.

Accordingly, the order of the circuit court of Champaign County denying defendant's motion to vacate the default judgment is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McCULLOUGH, P.J., and GREEN, J., concur.