PHILLIP GOLD, Plaintiff-Appellant, v. JOHN RADER *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—89—1301, 1—89—1768 cons.

Opinion filed July 27, 1990.

776

Michael W. Rathsack, of Chicago, for appellant.

Springer, Casey, Dienstag & Devitt, P.C., of Chicago (Gary E. Dienstag and Edward J. Springer, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

In 1981, the plaintiff, Phillip Gold (Gold), and the defendant, John Rader (Rader), entered into a joint venture agreement involving the ownership and management of an office building. In 1982, the parties entered into a dissolution agreement. The dissolution failed to come about and, in January 1985, Gold retained a law firm (Firm) to represent him in the dispute regarding the dissolution agreement and the property. A senior attorney (Partner) was in charge of the case, but other attorneys from the Firm, including at least one other partner, worked on the case. In August 1986, Gold, by the Firm, filed a complaint against Rader for partition and other relief. In June 1987, Rader filed a motion to strike and dismiss Gold's then-amended three-count complaint. The partner told Gold about the motion to strike and dismiss, and the firm filed a response to Rader's motion in October 1987. Gold continued to communicate with the Firm through the first quarter of 1988. Thereafter, however, Gold did not hear from his attorneys, and he assumed that this indicated a lack of material developments in his case.

Following a May 20, 1988, status call at which no one appeared for Gold, the court set a July 8, 1988, pretrial conference and required the appearances of Rader and Gold personally and their counsel. By a letter dated May 20, Rader's attorney notified the Partner of this order. On July 3, 1988, Rader filed a pretrial memorandum and on July 6, 1988, sent by messenger a copy of the pretrial memorandum to the Partner with a cover letter notifying him of the July 8 conference.

On July 8, 1988, neither Gold nor his attorney appeared at the conference. The court set the case for July 18, 1988, for the purpose of setting a trial date and further ordered that, if Gold failed to appear in court at that time, the court would dismiss his amended complaint with prejudice, and declare Gold in default for his failure to answer or otherwise plead to Rader's affirmative defenses and counterclaim, and hear *instanter* a prove up of Rader's affirmative defenses and counterclaim. By a letter dated July 8, 1988, which was sent by certified mail, Rader's attorney sent a copy of this order to the Partner, which was delivered July 11, 1988.

Neither Gold nor his counsel appeared before the court on July

18, 1988. Rader submitted his affidavit setting forth the parties' interests in the property and the value of that property and asked the court to fix Gold's interest and permit Rader to purchase that interest for $103,357.16. In his judgment order of July 18, 1988, the judge ordered Gold in default, dismissed his complaint with prejudice, found Rader's counterclaim confessed against Gold and ordered that the joint venture be terminated by way of sale of Gold's interest in the joint venture to Rader for $103,357.16. Gold's attorney was sent by certified mail a copy of the July 18 default judgment which was delivered on July 21, 1988.

After July 18, according to Gold's affidavit which he later filed in his motion to vacate the default judgment, Rader continued to send to Gold notices for arrearages that had been credited against amounts due to Gold in the judgment order of that date. Rader, however, indicated in his counteraffidavit that any such notices were computer-generated rent statements and that after July 18, 1988, Rader never attempted to collect arrearages that were credited in the judgment.

In the fall of 1988, Gold left several telephone messages for the Partner that were not returned. Thereafter, Gold spoke with another partner at the Firm, who indicated that he would ascertain the status of the case and telephone Gold; however, he did not call back.

According to Gold's affidavit, Gold and Rader maintained separate offices in the subject office building. Also, Gold and Rader "met and spoke" at a meeting of the board of directors of an unrelated corporation, "but nothing was said concerning the lawsuit." At no time did Rader inform Gold of the default judgment. Rader stated in his affidavit that there had been acrimony between them and that Rader preferred that all communications be made through their attorneys. Moreover, although Rader admitted that he spoke with Gold at a board meeting, he indicated that all the discussions involved the unrelated corporation and that the discussions were in the presence of other directors and were not private.

On September 21, 1988, by certified mail, Rader's attorneys sent the Partner a notice of tender of payment, indicating that on October 5, 1988, payment of the sum would occur at the offices of Rader's attorneys and requesting a response from Gold within seven days. This notice was delivered on September 22, 1988. Gold and his attorneys failed to respond to this notice. On September 30, 1988, Rader's attorneys mailed notice by certified mail to the Partner of a motion set for October 11, 1988, for leave to deposit funds with the clerk of the court and for judicial assignment of Gold's interest. This notice was received by the Firm on October 4, 1988.

On October 11, 1988, the judge granted Rader leave to deposit the funds with the court clerk and ordered that, upon such deposit, the court would execute a judicial assignment of Gold's interest. Notice of this order was sent by certified mail to the Partner on October 12, 1988, and received by the Firm on October 14.

On November 30, 1988, after being unable to contact the Partner and after the other partner with whom he had spoken failed to return his call, Gold personally reviewed the court file for his suit and first learned of the judgment against him. Thereafter, he learned that the Partner allegedly suffered from alcoholism and that a disciplinary hearing was proceeding against the Partner. Gold hired a new firm, Altheimer & Gray, which filed a section 2—1401 (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) petition to vacate the default judgment on January 18, 1989. The petition, which sought to vacate the default judgment, included an affidavit of Gold indicating that Gold had a 50%, rather than a 33⅓%, interest in the property and included as support therefor several Federal income tax forms detailing the partners' interests in the joint venture.

On April 20, 1989, the judge entered an order denying the petition to vacate the default judgment. The judge found that Gold's petition sufficiently established a meritorious defense to shift the burden on that element to Rader and asked Gold's counsel to concentrate on the due diligence element. That counsel stated, "I'm not going to try to defend *** the conduct of Mr. Gold's prior attorneys in this case. I simply don't think I can *** in good faith before your Honor. *** But I do believe that Mr. Gold has acted with due diligence throughout this matter"; he cited Gold's experience with the Partner prior to the failures to appear and Gold's efforts to check on the progress of his case.

The judge found that Gold personally acted with due diligence in presenting the petition to the court after learning of the judgment, but noted that a litigant has a duty to follow the progress of his own case. The judge held that Gold failed to establish due diligence before the judgment was entered, given the conduct of his attorney, whom Gold chose, and his attorney's firm, and denied the section 2—1401 petition. In denying the petition, the court stated that there was "no reason why that money should be held any longer and it should be disbursed without prejudice to anyone's rights, whether if any subsequent motion is made here or in the appellate court." Gold did withdraw the money that had been deposited by Rader with the clerk of the court. On May 9, Gold filed a notice of appeal of the April 20, 1989, order denying his motion to vacate. Rader has filed a motion to

dismiss the appeal which we will address first.

Rader contends that Gold's acceptance of the funds deposited with the court clerk barred Gold from appealing the judgment that made those funds available to him. Gold recognizes a general rule that bars an appeal by one who has accepted the benefits of a judgment, but cites an exception to that rule which allows an appeal if the appellant is entitled to the accepted benefit "in any event"; *i.e.*, regardless of the appellate court's disposition of the appeal. (See *Spanel v. Berkman* (7th Cir. 1948), 171 F.2d 513, 515 (" 'The general rule is well settled that unless there is a separable controversy, or unless there is some sum to which the appealing party is entitled in any event, he may not accept the benefit of the decree and later appeal. [Citations.]' " quoting *Spencer v. Babylon R. Co.* (2d Cir. 1918), 250 F. 24, 26).) Gold argues that he is entitled to the funds he withdrew regardless of how this court rules. Moreover, Gold contends that Rader has waived this issue by failing to take a cross-appeal from the portion of the judgment allowing Gold to withdraw the funds without prejudice to his rights. We deny the motion to dismiss but not on the ground that Rader failed to cross-appeal.

■■ ■ The default judgment was entered on April 20, 1988. On May 2, 1988, the judge denied the petition to vacate the April 20 order and, at Gold's request, ordered that "Gold is authorized to withdraw all funds, plus accrued interest, now on deposit with the clerk of the court pursuant to the court's order of October 11, 1988, *without prejudice to rights of appeal,* over objection of defendant, John Rader." (Emphasis added.) On June 9, Rader motioned the trial court under section 2—1203(a) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203(a)) to vacate that part of the court's order of May 2 allowing Gold to withdraw the funds without prejudice to his rights of appeal. Thereafter, the judge granted Rader leave to withdraw his post-trial motion *"without prejudice to defendant* raising the issues contained therein *** in the event the orders *** are reviewed on appeal." (Emphasis added.) Gold contends that Rader was required to file a cross-appeal from the order of May 2. We disagree. Both parties apparently were of the view in the trial court that the trial judge could affect appealability by the inclusion of the words "without prejudice" in the May 2 order. He could not. It is for this court to determine whether actions taken by a party after the entry of an appealable order render an appeal moot, divest this court of jurisdiction or render the appeal subject to dismissal. Consequently, whether the withdrawal of the funds by Gold rendered his appeal of the order subject to dismissal was in no way affected by any language used by the trial judge in his order,

and Rader was not required to file an appeal from that order.

■ We do believe, however, that the motion to dismiss the appeal should be denied because Gold, by withdrawing the money deposited by Rader, took nothing that is still subject to dispute. It was Rader who asked for an order permitting him to purchase Gold's interest. In his affidavit he proffered two possible purchase prices; one was $776,000, which Rader contended was the price fixed by the joint venture agreement. The other price was for the appraised figure of $800,000. That appraisal which was submitted by Rader in his affidavit was made by an appraiser retained by Rader. Rader's affidavit established that if the court permitted him to buy the property for $776,000, Gold would receive $103,571 for his interest. If the property were sold at $800,000 to a third party, other expenses such as broker's fees would reduce the value of Gold's interest to $96,554. The value of Gold's interest under both price options was based on Rader's claim, accepted by the court in the default judgment, that Gold was entitled to 43.64% of the purchase price and Rader himself was entitled to 56.36%. The judge ordered that Gold's interest was purchased by Rader for $103,371 and granted Rader leave to deposit the funds. Gold took only what Rader said he was entitled to take.

■ The general rule in Illinois is that a litigant cannot attack a decree after enjoying its benefits, if, were the judgment reversed on appeal, the opposing party would be at a disadvantage. (*In re Marriage of Kusper* (1990), 195 Ill. App. 3d 494.) Rader tells us that if this case were to be reversed, he would be at a disadvantage. We fail to see any realistic possibility of any detriment to him. The judge accepted Rader's figure of $776,000 as a reasonable purchase price. Gold has admitted that he cannot seek a rescission of the sale to Rader. Consequently, Rader's fear that a forced sale to a third party is possible upon remand is unfounded. The only dispute that would be involved is whether Gold should get 43.64% of the $776,000 or the higher percentage claimed by Gold. For these reasons, the motion to dismiss the appeal is denied.

Turning now to the merits of the appeal, we shall consider Gold's contention that the trial judge erred in denying his section 2—1401 petition on the ground that the Partner's lack of diligence barred such relief. Gold asserts that, despite the admitted negligence of the Partner specifically and of the Firm generally, equity demands that his section 2—1401 petition be granted because he personally exercised diligence, he established a meritorious defense, and Rader would be unjustly enriched absent a vacation or modification of the default judgment.

782

■ The supreme court provided a detailed discussion of the burdens facing a section 2—1401 petitioner in *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381:

"[A section 2—1401 petition] must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. [Citations.] The quantum of proof necessary to sustain a section 2—1401 petition is a preponderance of the evidence. [Citations.] Whether a section 2—1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented. [Citations.] As such, a court of review is justified in disturbing the judgment of the circuit court only if it finds that the court abused its discretion. [Citations.]" 114 Ill. 2d at 220-21.

The court set forth the requirements of the second element, due diligence in presenting a defense or claim in the original action, as follows:

"Due diligence requires the section 2—1401 petitioner to have a reasonable excuse for failing to act within the appropriate time. [Citations.] Since section 2—1401 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence [citations], a party relying on section 2—1401 is not entitled to relief 'unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court.' [Citation.] Specifically, the petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment. [Citations.] In determining the reasonableness of the excuse offered by the petitioner, all of the circumstances attendant upon entry of the judgment must be considered, including the conduct of the litigants *and their attorneys.* [Citations.]" (Emphasis added.) (114 Ill. 2d at 222-23.)

Finally, the court cautioned that relief under this section should not be too restricted, but that circuit courts should exercise their equitable powers and grant such petitions to avoid "unfair, unjust or unconscionable" results. 114 Ill. 2d at 225.

In *Smith*, the plaintiffs sued a builder for breach of contract and

breach of warranties in the construction of a room addition to their home. The defendant was served with process at its place of business; service was had upon the defendant's sales manager. The defendant did not answer or appear within 30 days of service, and the court entered a default judgment against it. The defendant was not given notice of and did not appear at a hearing on damages at which a $50,000 judgment was entered against the defendant. Subsequently, a garnishment summons was served on the defendant's bank and a judgment was entered against the bank. The following day, the defendant, by counsel, filed a section 2—1401 petition asserting that its failure to respond constituted excusable mistake because (1) its duly authorized officers never received the summons and complaint from the sales manager who was served and (2) despite the defendant's repeated presence at the plaintiffs' home with the plaintiffs and their attorney, no mention was made of the lawsuit or the default judgment.

The supreme court held that the trial court did not err in concluding that the defendant failed to establish a good excuse for failing to appear. The court noted that while professional courtesy might require a plaintiff to notify a defendant who had failed to appear at a damages hearing or of an intent to seek a default judgment, "this alleged breach of professional courtesy on the part of the plaintiffs' counsel is insufficient to constitute unfair, unjust, or unconscionable conduct, and does not justify this court's easing of the due diligence requirement." 114 Ill. 2d at 226.

In the present case, Rader's attorney notified his opposing counsel of every step along the path to default judgment and beyond. Gold's attorney was simply negligent, as the plaintiff admits, in failing to act on these notices. Moreover, like the trial court below, the *Smith* court noted that a litigant has a duty to follow the progress of his own case and that imposing a duty on litigants and their attorneys to advise their opponent regarding the proceedings "would *** undermine the adversarial nature of our legal system." (114 Ill. 2d at 226-27.) Given the notices to Gold's attorney of record, neither Rader nor his attorney had any duty to apprise Gold personally of the state of the proceedings involving his complaint and Rader's counterclaim. Gold had a duty to personally follow the progress of his case which could not be shifted to his attorney. Section 2—1401 "does not afford a remedy to a party who has been negligent *or whose trial counsel has been negligent*." (Emphasis added.) *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 913, 393 N.E.2d 707, 711. See also *Dudek, Inc. v. Shred Pax Corp.* (1990), 196 Ill. App. 3d 720.

Gold relies on *Campbell v. White* (1989), 187 Ill. App. 3d 492, 543 N.E.2d 607, for the proposition that the circumstances presented are so unfair, unjust or unconscionable as to merit section 2—1401 relief despite the absence of due diligence in presenting his defense to the trial court. *Campbell* is distinguishable. The defendant, a police officer, sought to vacate a default judgment within 30 days of the judgment under section 2—1301(e). The motion was supported by the affidavits of the defendant and his attorney. The attorney said that he was in private practice and served as a special assistant Attorney General representing the defendant in a case in Federal court; this related action was filed against the defendant in State court and, in violation of the Attorney General's rule that special assistants handle only those cases to which they are assigned, the attorney told the defendant that he would represent the defendant in the State court matter; the attorney's affidavit stated that "the chief reason for my lack of diligence in this cause is an ongoing problem with alcohol." (187 Ill. App. 3d at 498.) The defendant testified that after informing the attorney of the summons in the State court action, he called the attorney 5 to 10 times, but his calls were not returned; he did not write to the attorney nor make any attempts to go to his office; the defendant concluded that if something important happened, the attorney would contact him.

The *Campbell* court explicitly recognized the difference between petitions under section 2—1401 and motions under section 2—1301(e), stating that "the question on appeal is not whether the trial court committed an abuse of discretion, but whether substantial justice has been done between the parties under the circumstances of the case." (187 Ill. App. 3d at 503.) Moreover, the court determined that in considering the movant's lack of diligence—which is only a factor to be considered under section 2—1301(e), not a required element as in section 2—1401—it was nonetheless appropriate to charge the moving party with his attorney's negligence. The court concluded that the attorney—and thus the defendant—was negligent, but that this negligence did not bar relief because "[i]t was not unreasonable for the defendant to think [the attorney] represented him in [the State court] case nor was he negligent in the selection [of the special assistant Attorney General and] *** after the receipt of the order for judgment, [the defendant] immediately took action." (187 Ill. App. 3d at 504.) The court reversed the denial of the section 2—1301(e) motion because, considering all the factors involved, substantial justice required the vacation of the default judgment.

The standard of review in the instant case is whether the trial

judge abused his discretion, not whether substantial justice requires reversal as in *Campbell*. Gold chose his attorneys; neither the Firm nor the Partner was appointed by the Attorney General. Moreover, unlike the defendant in *Campbell*, who offered the affidavit of his attorney, Gold offered no affidavit by the Partner to support his assertion that the partner was an alcoholic or to establish some causal relationship between the asserted alcoholism and the lack of due diligence. Also, no explanation is offered for the failure of the Firm and its other attorneys to exercise due diligence in pursuing this case. Gold admits that the Firm performed negligently and is seeking compensation for that negligence in a separate suit against that firm. Imputing this negligence to Gold in the present case was not an abuse of discretion by the trial judge.

After the briefs were filed, Gold was given leave to cite additional authority, *Beeson v. Smith* (7th Cir. 1990), 893 F.2d 930, and *Wilhelmsen v. Century 21 Bee Line Realty, Inc.* (1989), 193 Ill. App. 3d 64, 549 N.E.2d 815. Both cases involved petitions to vacate which were filed within 30 days of the dismissal orders. We have already explained that such petitions are governed by standards different from those applicable here.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and RAKOWSKI, J., concur.