BRIAN K. FLISK *et al.*, Plaintiffs-Appellants, v. CENTRAL AREA PARK DISTRICT *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—89—0443

Opinion filed September 18, 1990.

Edward A. Berman, P.C., of Chicago (Edward A. Berman, of counsel), for appellants.

Carney & Brothers, Ltd., of Chicago (Ellen E. Douglass, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs charge that defendants wrongfully terminated their employment as police officers and seek both equitable relief and damages. After a default judgment was entered in favor of plaintiffs, defendants filed a petition to vacate pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401), which itself was subsequently dismissed for want of prosecution. However, the trial judge granted a second section 2—1401 petition filed by defendants approximately six months later. Plaintiffs appeal from this ruling. We reverse.

On June 30, 1987, plaintiffs filed a complaint seeking declaratory relief, an injunction, and damages from the Central Area Park District (Park District) and its board of commissioners, alleging that they had been wrongfully dismissed from their positions as part-time police officers for the Village of Maywood.[1] On July 1, 1987, the parties appeared in court to argue plaintiffs' motion for a temporary restraining order. Defendants were represented at that hearing by attorney Robert Grundin, who did not file an appearance at that time. After denying the plaintiffs' motion, the court ordered defendants to file an appearance and to answer or otherwise plead within 15 days. Defendants were served with the complaint on July 11 and 13.

On August 24, 1987, plaintiffs filed a notice of motion and motion indicating that they would seek a default judgment on September 8, 1987, on the ground that none of the defendants had filed an appearance or pleading of any kind. The certificate of service indicates that the notice of motion and the motion were mailed to defendants on that same date. The motion was granted on September 9, 1987, to which date the matter had been continued. On November 4, 1987, defendants Sharp, Dabney, and Wade, this time represented by attorney Luther Spence, filed a petition to vacate the default judgment pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401), alleging that Grundin had resigned without notice, that defendants did not learn of the resignation until after the rendition of the default judgment, and that they did not receive a copy of the judgment until the middle of October, two days after a prove up hearing on damages. Accompanying affidavits executed by the petitioners stated that Spence was hired on or about October 6, 1987, and that defendants had no knowledge of plaintiffs' em-

---

[1]Plaintiffs state in their complaint that defendants Dilworth and McKinnon are not being sued in their individual capacities, reflecting the fact that these commissioners did not vote for their suspension.

ployment status with the Park District.

An amended petition filed on November 9, 1987, read together with the accompanying affidavits, alleged that plaintiffs did not have an employment contract with the Park District, and that this constituted a meritorious defense. The petition also asserted that the Park District "was without funds to retain representation to do a thorough investigation until on or about Oct. 15, 1987," and that defendants did not receive a copy of the judgment order until October 15, after a prove up hearing had been held. Neither the amended petition nor the accompanying affidavits mentioned anything as to when defendants first learned of Grundin's resignation. An order was entered on March 31, 1988, dismissing the amended petition for want of prosecution.

Defendants once more retained new counsel in June 1988, and a new section 2—1401 petition was filed on October 11, 1988, on behalf of the Park District and defendants Sharp, Dabney, and Wade. The petition alleged in substance that attorneys Grundin and Spence mishandled the case, that defendants should not be penalized for their attorneys' incompetence, and that failure to grant the petition would lead to an unjust result. Contrary to explicit statements contained in the affidavits accompanying the original November 4, 1987, petition, it was conceded in the October 11, 1988, petition that Spence was first hired by the Park District "on or about" September 15, 1987, six days after the default order was entered. These allegations were repeated in affidavits signed by the defendants. A number of defenses, alleged to be meritorious, were set forth, including the absence of a valid employment contract with plaintiffs and that one of the plaintiffs had submitted a letter of resignation.

On November 30, 1988, defendants' petition to vacate the default judgment was granted. After plaintiffs' motion to vacate the November 30, 1988, order was denied, this appeal followed.

■ The petitioner in a section 2—1401 proceeding is required to demonstrate by a preponderance of the evidence (1) a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition. (*In re Petition of Village of Kildeer* (1988), 124 Ill. 2d 533, 530 N.E.2d 491; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381; *Dudek, Inc. v. Shred Pax Corp.* (1990), 196 Ill. App. 3d 720, 554 N.E.2d 1002.) In reviewing the grant of a section 2—1401 petition to vacate a judgment, reversal is proper only if the petitioner can show an abuse of discretion. *Airoom*, 114 Ill. 2d 209, 499 N.E.2d 1381.

■ ■ The *Airoom* decision instructs us that "[d]ue diligence requires the section 2—1401 petitioner to have a reasonable excuse for

failing to act within the appropriate time." (114 Ill. 2d at 222, 499 N.E.2d at 1386.) We first observe that there was a clear lack of due diligence in defendants' contesting the underlying action in the trial court. The record contains an affidavit signed by plaintiff Louden Flisk on December 19, 1988, in connection with plaintiffs' motion to reconsider the November 30, 1988, order. The affidavit, which has not been controverted by defendants, attaches, as a part thereof, a July 2, 1987, letter from Robert Grundin to David Sharp and the board of commissioners stating that Grundin was resigning as attorney for the district effective immediately. It is also undisputed that defendants were properly served with the complaint and were aware of the pendency of the lawsuit. Further, the record indicates defendants hired attorney Spence within 30 days of the entry of the default judgment and were therefore certainly in a position to file a timely and appropriate motion for relief. Even if we were to assume *arguendo* that defendants did not learn of Grundin's resignation until after the entry of the default judgment, to find due diligence on these facts would be to ignore numerous Illinois decisions holding that it is the duty of all litigants to follow the progress of litigation to which they are a party, and that the misdeeds of their attorney do not excuse them from this obligation. *E.g., Dudek, Inc. v. Shred Pax Corp.* (1990), 196 Ill. App. 3d 720, 554 N.E.2d 1002; *Dassion v. Homan* (1987), 161 Ill. App. 3d 141, 514 N.E.2d 41, *appeal denied* (1988), 118 Ill. 2d 542, 520 N.E.2d 384; *American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 400 N.E.2d 102; *Bartolini v. Popovitz* (1969), 108 Ill. App. 2d 89, 246 N.E.2d 834.

We similarly find defendants have failed to exercise due diligence in instituting a section 2—1401 proceeding. We note that defendants did not file their first section 2—1401 petition until November 4, 1987, almost four weeks after the trial court lost jurisdiction over the underlying action, despite the fact that defendants hired an attorney to replace Grundin on September 15, 1987, only six days after the default judgment was entered. Moreover, defendants cannot avoid the consequences flowing from the dismissal of their first petition for want of prosecution. Due to the equitable nature of a section 2—1401 proceeding, we cannot say there are no circumstances in which the filing of successive petitions would be permissible. However, the filing of the second petition in this case was clearly improper.

Defendants attempt to disengage themselves from their difficulties by asserting that procedural bars such as *laches* and estoppel are relaxed when used as a defense to a suit brought by a governmental body, and that the due diligence requirement should similarly be relaxed in this case. (See *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427,

220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 957; *County of Cook v. Chicago Magnet Wire Corp.* (1987), 152 Ill. App. 3d 726, 504 N.E.2d 904; *Pavlakos v. Illinois Department of Labor* (1984), 128 Ill. App. 3d 783, 471 N.E.2d 547, *aff'd* (1985), 111 Ill. 2d 257, 489 N.E.2d 1325.) However, all of these decisions are authority only for the proposition that *laches* and estoppel may not apply against a governmental entity which seeks to enforce an important public right. They are therefore inapposite to the instant case, which involves no such element.

We recognize that in a proper case, "where justice and good conscience may require it a default judgment may be vacated even though the requirement of due diligence has not been satisfied." *(Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 225, 499 N.E.2d 1381, 1388; see also *Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, 471 N.E.2d 221; *Eastman Kodak Co. v. Guasti* (1979), 68 Ill. App. 3d 484, 386 N.E.2d 291.) Defendants assert in a most conclusional fashion that "[t]o allow a potentially large and unwarranted judgment amount to be lodged against the Park District and to subject the taxpayers of Maywood to damage and a squanderance of their tax dollars would be inequitable."

We find this argument to be unpersuasive on these facts. Defendants have cited no cases suggesting that holding litigants responsible for the errors of their attorney is somehow unfair, unjust, or unconscionable. A stronger showing is needed to overcome the due diligence requirement. (*Airoom*, 114 Ill. 2d at 227-29, 499 N.E.2d at 1389-90.) For example, in *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348, after obtaining a default judgment, plaintiff presented fraudulent documentation of damages to the court in an *ex parte* proceeding. In *Ellman v. De Ruiter* (1952), 412 Ill. 285, 106 N.E.2d 350, plaintiff's attorney obtained a default judgment and subsequently made representations to defendant's attorney creating the impression that the action was still pending, thus preventing a motion to vacate within the 30-day jurisdictional period. Similarly, in *Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, 471 N.E.2d 221, after obtaining a default judgment, plaintiff's attorney failed to advise the court at an *ex parte* hearing on damages that defendant was entitled to a substantial offset credit. In each of these cases, the petition to vacate was granted based on the court's equitable powers, without consideration of the petitioner's due diligence.

Here, defendants point to no affirmative misconduct on the part of plaintiffs or their counsel which would overcome their lack of due diligence or which would otherwise bring their case within the facts of such

decisions as *Elfman* and *Ellman*. Defendants have repeatedly claimed that they did not receive notice of the default judgment until the middle of October 1987, over 30 days after the trial court had entered the judgment. However, we note that "the failure to provide a defendant with notice of entry of a default order does not by itself invalidate the default." (*Kaput v. Hoey* (1988), 124 Ill. 2d 370, 379, 530 N.E.2d 230, 234; Ill. Rev. Stat. 1987, ch. 110, par. 2—1302(a).) Furthermore, while delaying notification over 30 days is one factor to be considered in determining whether plaintiff has acted so unfairly as to justify relaxation of the due diligence requirement, it is not by itself sufficient basis for doing so. *Airoom*, 114 Ill. 2d at 227, 499 N.E.2d at 1389.

On the other hand, as we have noted above, defendants have each filed affidavits contradicting their own earlier affidavits as to when the Park District first hired attorney Spence. Moreover, although the amended petition filed November 9, 1987, stated that defendants were not notified of the default judgment until after a prove up hearing on damages was held, our examination of the record fails to disclose any indication that such a hearing ever took place. Finally, defendants' initial assertions that they did not learn of Grundin's resignation until after rendition of the default judgment on September 9, 1987, were omitted from their amended petition and from their second petition; these assertions also conflict with Grundin's unchallenged, unrebutted, July 2 letter.

Thus, the equities in no way support defendants' position in this case for, in all fairness to plaintiffs, we cannot condone (1) the failure of defendants to exercise due diligence in defending against the underlying action; (2) neglecting to seek relief from the default judgment within 30 days of its entry, although their attorney had the opportunity to do so; (3) a similar lack of diligence in their filing for section 2—1401 relief; (4) their dismal display of negligence in permitting their first section 2—1401 petition to be dismissed for want of prosecution; and (5) their inexcusably taking almost 6½ months after this latest demonstration of carelessness to file a second section 2—1401 petition, assuming the filing of a second such petition to be proper. To grant relief to parties who so blithely pyramid their negligence presents but a clinical case of an abuse of discretion.

Reversed.

HARTMAN and BILANDIC, JJ., concur.