576 N.E.2d 552 (1991)
216 Ill. App.3d 863
159 Ill.Dec. 883
Eloy SALAZAR et al., Plaintiffs-Appellants,
v.
WILEY SANDERS TRUCKING COMPANY, INC., Defendants-Appellees.
2-90-0927.
Appellate Court of Illinois, Second District.
July 26, 1991.
*553 Allen L. Ray, Ray, Rizowy & Fleischer, Chicago, for Eloy and Elva Salazar.
Gary W. Klages, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Waukegan, D. Kendall Griffith, Joshua G. Vincent, Gary J. Bazydlo (argued), Hinshaw & Culbertson, Chicago, for Wiley Sanders Trucking Co. and Eddie K. Blair.
*554 Justice NICKELS delivered the opinion of the court:
Plaintiffs, Eloy and Elva Salazar, appeal from a July 24, 1990, order of the circuit court of Lake County which denied their section 2-1301(e) motion of the Code of Civil Procedure (Ill.Rev.Stat.1987, ch. 110, par. 2-1301(e)) and section 2-1401 petition of the Code of Civil Procedure (Ill.Rev.Stat. 1987, ch. 110, par. 2-1401) to vacate a November 22, 1988, order which dismissed their personal injury complaint against defendants, Wiley Sanders Trucking Company and Eddie K. Blair, for want of prosecution. The issues raised on appeal are whether the trial court erred in denying the section 2-1301(e) motion and whether the trial court abused its discretion in denying the section 2-1401 petition.
On July 19, 1988, plaintiffs filed a complaint against defendants which alleged that on July 19, 1986, Blair, as an agent of Sanders Trucking engaged in his employment duties, fell asleep and his five-axle freight liner vehicle overturned, blocking two lanes of traffic. Plaintiffs' vehicle struck the freight liner, and they suffered injuries as a result. Plaintiffs also alleged that Sanders Trucking negligently entrusted the vehicle to Blair. David Z. Feuer represented plaintiffs and filed the complaint.
Pursuant to defendants' section 2-615 motion to dismiss, the court dismissed plaintiffs' complaint on September 30, 1988, and allowed plaintiffs 21 days to file an amended complaint. (Ill.Rev.Stat.1987, ch. 110, par. 2-615.) However, on November 22, 1988, the cause was dismissed for want of prosecution (DWP order) on the court's own motion. No amended complaint was ever filed.
On December 21, 1988, Feuer filed a section 2-1301(e) motion to vacate the DWP order. (Ill.Rev.Stat.1987, ch. 110, par. 2-1301(e).) The motion was set for hearing on December 30, 1988.
Nothing further appears in the record until April 25, 1990, when plaintiffs filed a section 2-1401 petition to vacate the DWP order. (Ill.Rev.Stat.1987, ch. 110, par. 2-1401.) The petition was filed by attorney Allen L. Ray of the law firm where Feuer was formerly employed. The petition alleged that from the time plaintiffs' case was brought to the firm in July 1986 and all relevant times thereafter Feuer had complete responsibility for plaintiffs' case. It was alleged on "information and belief" that Feuer did not appear at defendants' motion to dismiss. It provided that Feuer failed to file an amended complaint. The petition also alleged that while Feuer filed a section 2-1301(e) motion to vacate the DWP order, he failed to present the motion to the court "[f]or reasons unknown then and now" and the motion was stricken.
The petition also alleged that Feuer never advised members of the law firm that the cause was DWP'd, but told them after December 30, 1988, that the matter was pending. Feuer resigned on July 31, 1989, and later informed the firm that he was suffering from medical depression and was under psychiatric care. "Upon information and belief" Feuer was alleged to be incapacitated while this case was in his control. The petition was accompanied by Ray's affidavit and plaintiff Eloy's affidavit which provided that he communicated with Feuer from time to time and was told the matter was progressing and discovery was pending.
Defendant filed a motion to dismiss plaintiffs' section 2-1401 petition. However, plaintiffs filed an amended motion on June 13, 1990, which sought a ruling on Feuer's section 2-1301(e) motion to vacate the DWP order filed December 21, 1988, which plaintiffs now alleged was still pending as no order was ever entered on it. The motion incorporated by reference the previous section 2-1401 petition. Alternatively, plaintiffs again sought to vacate the DWP order by a section 2-1401 petition. Ray's affidavit with the amended motion stated that letters from defendants' attorney dated June 1, 1989, regarding rescheduling of depositions until early October 1989 were in Feuer's file. No other information in the file showed the disposition of Feuer's section 2-1301(e) motion. Defendants filed a motion to dismiss plaintiffs' amended motion.
*555 The matter was set for a hearing on July 20, 1990. Plaintiffs filed an affidavit by Roneen Blank, M.D., a psychiatrist, which provided that Blank treated Feuer from October 1989 through April 1990. Feuer was diagnosed with an adjustment disorder with depressed mood. In Blank's professional opinion it was "highly likely" that Feuer suffered from this condition since at least early 1988.
Following a hearing at which no court reporter was present according to plaintiffs, the court denied plaintiffs' section 2-1301(e) motion and section 2-1401 petition. The July 24, 1990, order provided that: the December 21, 1988, section 2-1301(e) motion to vacate the DWP order was stricken on December 30, 1988, and was not pending; the parties stipulated that this motion had been stricken; in any event, if it were still pending it was stale and should be denied; Dr. Blank's affidavit was inadequate because it failed to show that Feuer suffered from a mental illness or was being treated prior to July 31, 1989; and nine months elapsed between Feuer's resignation and the filing of the section 2-1401 petition which showed lack of due diligence.
Plaintiffs initially contend the trial court's finding that the section 2-1301(e) motion was stricken on December 30, 1988, is incorrect because there is no basis in the record to support the finding. They also claim that they never stipulated that the motion had been stricken. Defendants argue that plaintiffs have supplied an inadequate record, and doubts must be resolved against them as appellants. (Foutch v. O'Bryant (1984), 99 Ill.2d 389, 76 Ill.Dec. 823, 459 N.E.2d 958.) In reply plaintiffs point out that the record is nonexistent for any proceeding on December 30, 1988, because Feuer was not present in court.
While plaintiffs have offered an explanation for the lack of supplying a record for December 30, 1988, they have failed to submit to this court a report of proceedings or its substitutes as provided in Supreme Court Rule 323 (134 Ill.2d R. 323) for the hearing held on their amended motion on July 20, 1990. (Marshall E. Winokur, Ltd. v. Shane (1980), 89 Ill. App.3d 551, 552-53, 44 Ill.Dec. 776, 411 N.E.2d 1142.) According to the July 24, 1990, order, counsel were present, arguments were heard, and the court was "advised in the premises," and yet plaintiffs have not furnished any form of a record for this proceeding. An appellant has the duty to present a complete record on appeal, and in the absence of an adequate record, it will be presumed that the trial court's judgment conforms to the law and has a sufficient factual basis. (Lakeland Property Owners Association v. Larson (1984), 121 Ill.App.3d 805, 808, 77 Ill.Dec. 68, 459 N.E.2d 1164.) The July 24, 1990, order states the parties stipulated that the motion was stricken on December 30, 1988, and since plaintiffs have failed to supply a record for the proceeding in which such a stipulation may have occurred, we resolve any doubt against plaintiffs as appellants. (In re Estate of Jacobs (1989), 189 Ill. App.3d 625, 629, 136 Ill.Dec. 978, 545 N.E.2d 502.) Plaintiffs' contention in their reply brief that defendants had an opportunity to supplement the record to show a stipulation is not persuasive as it was incumbent upon plaintiffs as the party seeking to have the judgment reviewed to present a record of proceedings to show the errors from which they complain. (Jacobs, 189 Ill.App.3d at 629, 136 Ill.Dec. 978, 545 N.E.2d 502; In re Custody of Caruso (1989), 185 Ill.App.3d 739, 743, 134 Ill.Dec. 196, 542 N.E.2d 375.) A party cannot generally dispute stipulated matters on appeal. Dawdy v. Sample (1989), 178 Ill.App.3d 118, 127, 127 Ill.Dec. 299, 532 N.E.2d 1128.
Plaintiffs also make the unsubstantiated statement in their brief that a "chance call" to the clerk's office in April 1990 gave them notice that no order had been entered on the section 2-1301(e) motion. Assertions in an appellant's brief cannot substitute for a proper record. (In re Marriage of Partyka (1987), 158 Ill.App.3d 545, 557, 110 Ill.Dec. 499, 511 N.E.2d 676.) The record does not indicate any evidence which was presented to the trial court to support this statement such as half sheets or other records from the clerk's office or even an *556 affidavit. We will not consider this statement as fact.
While plaintiffs have failed to present a record of the July 20, 1990, hearing, we do note that the July 24, 1990, order indicates some uncertainty on the trial court's part as to the status of the section 2-1301(e) motion on July 20, 1990. The order provided that the motion was stricken on December 30, 1988, and that the parties stipulated to that fact; however, the order further stated that if the motion was pending, it was stale and should be denied. Generally, a party cannot dispute stipulated matters on appeal (Dawdy, 178 Ill.App.3d at 127, 127 Ill.Dec. 299, 532 N.E.2d 1128), but since the end result of the trial court's order actually was to deny the section 2-1301(e) motion due to staleness, we will consider that issue on appeal.
Defendants assert that the trial court found the section 2-1301(e) motion stale and denied it pursuant to local court rules. Plaintiffs argue that the order does not refer to local court rules and there is no support for the proposition that the court based its ruling on local court rules. Once again, plaintiffs are disputing the basis for the trial court's finding and yet have failed to supply a record of the hearing wherein such basis may be found. The record does contain the motions and accompanying arguments which were before the trial court at the hearing. (See Walker v. Iowa Marine Repair Corp. (1985), 132 Ill. App.3d 621, 625-26, 87 Ill.Dec. 807, 477 N.E.2d 1335.) Based on these documents, the trial court was presented with a staleness issue under local court rules. The order recites that the motion was "stale" and should be denied. Therefore, the record before this court establishes that the trial court denied the section 2-1301(e) motion pursuant to local court rules due to the failure of plaintiffs to present it in a timely manner, and plaintiffs have failed to prove otherwise.
Circuit courts have the power to enact and enforce rules regulating their calendars and dockets as long as the rule does not conflict with supreme court rules or statutory law. (Martin Brothers Implement Co. v. Diepholz (1982), 109 Ill.App.3d 283, 286, 64 Ill.Dec. 768, 440 N.E.2d 320.) Although Supreme Court Rule 184 (134 Ill.2d R. 184) provides that either party may call up a motion, the failure of a nonmoving party to call up a motion does not preclude the trial court from exercising its discretion to deny a motion which the moving party has failed to call for a hearing. (Terrill v. St. Louis Southwestern Ry. Co. (1987), 154 Ill.App.3d 983, 107 Ill. Dec. 913, 507 N.E.2d 1282.) Trial courts have inherent authority to control their business. (Terrill, 154 Ill.App.3d at 986, 107 Ill.Dec. 913, 507 N.E.2d 1282.) Under local Rule 2.03(K) of the Rules of the Circuit Court of Lake County, the court may consider a motion denied by reason of delay if it has not been called within 90 days from the date it is filed. (Local Rules, 19th Jud.Cir., R. 2.03(K).) Such denial or dismissal is discretionary with the trial court, and a reviewing court will not overturn the trial court's determination in the absence of facts constituting an abuse of discretion. See Marshall E. Winokur, Ltd., 89 Ill. App.3d at 553, 44 Ill.Dec. 776, 411 N.E.2d 1142; People ex rel. Carey v. Forberg (1975), 33 Ill.App.3d 161, 166, 337 N.E.2d 369.
Plaintiffs argue that the trial court applied the wrong standard and should have vacated the DWP order under the circumstances of this case in the interest of substantial justice. (People ex rel. Reid v. Adkins (1971), 48 Ill.2d 402, 270 N.E.2d 841; Espedido v. St. Joseph Hospital (1988), 172 Ill.App.3d 460, 122 Ill.Dec. 405, 526 N.E.2d 664; People ex rel. Department of Revenue v. Countryman (1987), 162 Ill.App.3d 134, 113 Ill.Dec. 126, 514 N.E.2d 1038.) These cases involved section 2-1301(e) motions which were decided on their merits and not denied due to the failure of plaintiffs to call the motion for a hearing for about 18 months. In determining whether the trial court properly denied plaintiffs' section 2-1301(e) motion due to the delay, the question is whether the court abused its discretion. (See Marshall E. Winokur, Ltd., 89 Ill.App.3d at 553, 44 *557 Ill.Dec. 776, 411 N.E.2d 1142; Carey, 33 Ill.App.3d at 166, 337 N.E.2d 369.) Since plaintiffs' reasons and arguments given for the delay in calling the section 2-1301(e) motion for a hearing are the same as those offered in support of their argument for section 2-1401 relief, we examine the circumstances of this case to determine whether the trial court abused its discretion in denying the section 2-1301(e) motion due to the delay in calling it for a hearing and whether the trial court abused its discretion in denying the section 2-1401 petition.
We note that in Belluomini v. Lancome (1990), 207 Ill.App.3d 583, 152 Ill.Dec. 604, 566 N.E.2d 291, the Appellate Court for the First District found that a "stricken" section 2-1301(e) motion did not constitute an adjudication on the merits, and the motion remained pending for four years. However, the motion was not "denied" or "dismissed" as the July 24, 1990, order provides herein. Also, the defendants in that case made no argument before the trial court concerning local Rule 2.3 of the rules of the circuit court of Cook County concerning denial of a motion not called within 90 days, and the court would not consider it on appeal. Additionally, the instant plaintiffs have not argued that if the motion was only "stricken" on December 30, 1988, it remained pending.
To be entitled to relief under section 2-1401 of the Code (Ill.Rev.Stat.1989, ch. 110, par. 2-1401), petitioner must affirmatively set forth specific allegations supporting: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. (Smith v. Airoom, Inc. (1986), 114 Ill.2d 209, 220-21, 102 Ill.Dec. 368, 499 N.E.2d 1381.) In order to prevail under section 2-1401, petitioner must prove his/her right to the relief sought by a preponderance of the evidence. (Morski & Associates, Inc. v. R & R Resources, Inc. (1990), 198 Ill.App.3d 359, 144 Ill.Dec. 525, 555 N.E.2d 1044.) The determination of whether to grant the petition lies in the discretion of the trial court and will not be disturbed absent an abuse of discretion. (O'Malley v. Powell (1990), 202 Ill.App.3d 529, 147 Ill.Dec. 641, 559 N.E.2d 981.) Initially, this court notes that the trial court denied plaintiffs' petition for post-judgment relief based solely on plaintiffs' lack of due diligence. Therefore, this court need not address whether plaintiffs' section 2-1401 petition alleged facts establishing a meritorious claim. Smith, 114 Ill.2d at 221-22, 102 Ill.Dec. 368, 499 N.E.2d 1381; Dassion v. Homan (1987), 161 Ill.App.3d 141, 112 Ill.Dec. 645, 514 N.E.2d 41.
Due diligence requires that petitioner show that his/her inaction was the result of an excusable mistake and that petitioner acted reasonably, not negligently, when he/she failed to pursue the cause of action. (Dassion, 161 Ill.App.3d at 145, 112 Ill.Dec. 645, 514 N.E.2d 41.) Whether a litigant has acted reasonably is judged by all the circumstances surrounding entry of the judgment, including the conduct of the litigants and their attorneys. City National Bank v. Langley (1987), 161 Ill.App.3d 266, 112 Ill.Dec. 845, 514 N.E.2d 508.
Plaintiffs claim that since their attorney, Feuer, was mentally ill, they have a reasonable excuse for not prosecuting their claim or timely seeking to vacate the DWP order. (Campbell v. White (1989), 187 Ill. App.3d 492, 135 Ill.Dec. 224, 543 N.E.2d 607.) The Campbell court noted that the attorney "apparently" had some difficulty with alcohol during a portion of the period in question, but the court examined a number of factors in determining that substantial justice required that the default be vacated.
The illness of an attorney is always a persuasive excuse for his failure to comply with a court requirement. (Kaufman v. Kaufman (1974), 22 Ill.App.3d 1045, 318 N.E.2d 282.) However, plaintiffs failed to establish that Feuer was ill at the time the DWP order was entered or at the time he failed to appear on December 30, 1988, for the motion to vacate. The section 2-1401 petition stated only that the action was DWP'd on November 22, 1988, because Feuer failed to appear at a pretrial conference *558 and failed to file an amended complaint. It stated that "for reasons unknown then and now" Feuer failed to appear on December 30, 1988, for the section 2-1301(e) motion. The amended motion did not specifically allege that Feuer's mental illness was present and/or caused the failure of plaintiffs to diligently pursue their claim or to present their section 2-1301(e) motion for hearing. See George F. Mueller & Sons, Inc. v. Ostrowski (1974), 19 Ill.App.3d 973, 313 N.E.2d 684.
Although no counteraffidavits were filed by defendants, plaintiffs' affidavits do not establish that Feuer suffered from mental illness at the times in issue. Ray's affidavit merely stated that Feuer informed him subsequent to resigning that Feuer's illness "caused him to be unable to respond to various job responsibilities while with the firm." Dr. Blank's affidavit established that Feuer did not begin treatment until October 1989. The doctor could only state that it was "highly likely" that Feuer's symptoms and conditions were present early in 1988. These affidavits shed little light on the question of Feuer's condition at the times in question. (Diacou v. Palos State Bank (1976), 65 Ill.2d 304, 2 Ill.Dec. 351, 357 N.E.2d 518.) In fact, the affidavit of Ray shows that Feuer filed the section 2-1301(e) motion on December 21, 1988, and set the matter for hearing on December 30, 1988. Such activity on Feuer's part suggests that he was engaged in the practice of law and not "incapacitated." Diacou, 65 Ill.2d at 312, 2 Ill.Dec. 351, 357 N.E.2d 518.
In Campbell, 187 Ill.App.3d 492, 135 Ill. Dec. 224, 543 N.E.2d 607, relied upon by plaintiffs, the attorney therein specifically stated in his affidavit that he relapsed into alcoholism for the first two to three weeks of December 1987, the times in issue, while in Kaufman, 22 Ill.App.3d 1045, 318 N.E.2d 282, the attorney was ill for a month and one-half after filing a motion to vacate but did not explain his inaction for 5½ months. In People ex rel. Carey v. Forberg (1975), 33 Ill.App.3d 161, 337 N.E.2d 369, the attorney explained that he was taken ill soon after filing his post-trial motion, was hospitalized, operated on, and was recuperating until a few days before he took action on the motion. Plaintiffs failed to establish that Feuer's illness resulted in the delay in presenting the section 2-1301(e) motion for a hearing in a timely fashion, nor did they establish due diligence under section 2-1401 in prosecuting their claim in the original action.
Plaintiffs contend that Feuer misled all of them on the status of the cause. They point to the June 1, 1989, letters from defendants which rescheduled depositions for October 1989 claiming that these letters reasonably led plaintiffs to believe the matter was reinstated.
A party is normally responsible for following his lawsuit and will be bound by the negligence of his attorney. (O'Malley v. Powell (1990), 202 Ill.App.3d 529, 147 Ill.Dec. 641, 559 N.E.2d 981.) The affidavit of plaintiff Eloy shows that he communicated with Feuer on several occasions, including after November 22, 1988, and was told that the case was progressing. Under Tucker v. McNulty (1988), 173 Ill.App.3d 722, 123 Ill.Dec. 315, 527 N.E.2d 953, plaintiffs claim Eloy reasonably relied upon Feuer's representations in regards to the progress of his case. However, litigants have a duty to follow the progress of their case rather than merely to assume that counsel is doing everything necessary and proper. (City National Bank, 161 Ill. App.3d 266, 112 Ill.Dec. 845, 514 N.E.2d 508.) While Eloy's affidavit refers to communications with Feuer, it does not show that Eloy made inquiries after Feuer resigned. The court's July 24, 1990, order found a lack of diligence after July 31, 1989 (Feuer's resignation), and the filing of the section 2-1401 petition, a nine-month period. Eloy's affidavit offers no evidence of his diligence in inquiring of the case's status during that time period.
Plaintiffs are accountable for any deception caused by their original attorney, and it makes no difference that the fraud was perpetrated on plaintiffs as opposed to some other party or the court. (Dassion, 161 Ill.App.3d at 145, 112 Ill.Dec. 645, 514 N.E.2d 41.) Section 2-1401 cannot be used *559 to relieve parties from the consequences of their own mistakes or their attorney's deception. Harris Trust & Savings Bank v. Illinois Fair Plan Association (1990), 194 Ill.App.3d 761, 141 Ill.Dec. 385, 551 N.E.2d 378.
Plaintiffs' attorneys also claim that they were misled by Feuer regarding the status of the case. Knowledge of one member of a law firm is imputed to all of its members, and an attorney is responsible for the negligence of others in the firm. (Burton v. Estrada (1986), 149 Ill.App.3d 965, 103 Ill.Dec. 233, 501 N.E.2d 254.) Just as plaintiffs are accountable for any deception caused by their original attorney, Feuer's law firm is not necessarily excused by Feuer's deception. (See Dassion, 161 Ill.App.3d at 145, 112 Ill.Dec. 645, 514 N.E.2d 41.) In any event, plaintiffs' attorneys did not show diligence with respect to the case's status after Feuer resigned.
Plaintiffs claim that Feuer's file reasonably led them to believe that the matter had been reinstated, relying upon Martin v. Kargman (1971), 133 Ill.App.2d 545, 273 N.E.2d 677. They do not suggest that defendants deliberately tried to mislead plaintiffs with these letters.
First, in Martin the defendant's attorney who continued with settlement negotiations after a dismissal had constructive knowledge of the dismissal due to the fact that a member of his firm obtained it. Defendant's attorney was found to be in the better position as opposed to plaintiff's attorney to know what went on in his firm. Thus, despite defendants' attorney's letters in the file herein, plaintiffs' law firm would be in a better position to know the status of their section 2-1301(e) motion. While defendants' attorney probably would not have sent these letters if he were aware the action had been dismissed (O'Malley, 202 Ill.App.3d at 534, 147 Ill.Dec. 641, 559 N.E.2d 981), plaintiffs' attorneys had a duty to follow the progress of the case irrespective of the opponent's actions. Burton, 149 Ill.App.3d at 974, 103 Ill.Dec. 233, 501 N.E.2d 254.
Plaintiffs did not explain the notation on "Exhibit No. 2 of A" which is a "true and correct" copy of a June 1, 1989, letter from defendants' attorney which states "closed [or closure] 11-22-88." They do not offer an explanation regarding the fact that they knew the complaint was originally dismissed yet no amended complaint was ever filed.
Irrespective of all of the above, plaintiffs have offered no explanation regarding their inaction after October 1989. Defendants' attorney's letters indicated depositions would be taken early in October 1989. Even if plaintiffs reasonably relied on these letters to believe the matter was reinstated, there is no evidence that plaintiffs made any attempt (nor did their attorneys) to keep abreast of defendants' actions with respect to the depositions. Plaintiffs had a duty to follow the progress of their case (Flisk v. Central Area Park District (1990), 203 Ill.App.3d 253, 148 Ill.Dec. 563, 560 N.E.2d 1160; Morski, 198 Ill.App.3d 359, 144 Ill.Dec. 525, 555 N.E.2d 1044), as did plaintiffs' attorneys (Burton, 149 Ill. App.3d at 974, 103 Ill.Dec. 233, 501 N.E.2d 254). Here, plaintiffs' original attorney resigned and told Ray that his illness made him unable to respond to various job responsibilities. Despite this knowledge, plaintiffs relied solely on letters from defendants' attorney to advise them of the status of their case. Then, plaintiffs failed to follow the progress of their case after Feuer resigned and did nothing until April 1990. As previously noted, no amended complaint had been filed. Plaintiffs state that they had no reason to check the court file for status but offer no explanation for their failure to check the status of their file for over six months. Section 2-1401 is not intended to relieve the parties from the consequences of their own mistakes or their attorneys' negligence. (Dassion, 161 Ill.App.3d at 145, 112 Ill.Dec. 645, 514 N.E.2d 41.) Plaintiffs failed to show due diligence in bringing the section 2-1401 petition.
Lastly, plaintiffs rely on Elfman v. Evanston Bus Co. (1963), 27 Ill.2d 609, 190 N.E.2d 348, for the principle that despite a lack of due diligence, equity and justice require that their case be reinstated. Although *560 plaintiffs claim to have been diligent, they argue that equity requires that their cause be determined on the merits and that defendants will receive an unjustified windfall.
Equitable principles may require that a judgment be set aside even though there has been a lack of due diligence by the petitioner. (Dassion, 161 Ill.App.3d at 146, 112 Ill.Dec. 645, 514 N.E.2d 41.) Section 2-1401 invokes the equitable powers of the trial court which should prevent enforcement of a judgment when it would be unfair, unjust or unconscionable. (See Smith, 114 Ill.2d at 225, 102 Ill.Dec. 368, 499 N.E.2d 1381.) Under the facts of this case, defendants do not gain an unjust, unfair or unconscionable advantage which requires a relaxation of the due diligence standard.
There is no evidence which points to unfair, unjust or unconscionable conduct on the part of defendants or their attorney. (Smith, 114 Ill.2d at 228, 102 Ill.Dec. 368, 499 N.E.2d 1381.) Plaintiffs do not claim that defendants deliberately or fraudulently sought to mislead plaintiffs with the June 1989 letters. Plaintiffs point to no affirmative misconduct on defendants' part or defendants' counsel which would overcome plaintiffs' lack of due diligence or which would bring their case within Elfman. (Flisk v. Central Area Park District (1990), 203 Ill.App.3d 253, 148 Ill.Dec. 563, 560 N.E.2d 1160.) There is no suggestion of fraud or unconscionable behavior on the part of the litigants or the court, but it is apparent that the case was DWP'd and the section 2-1401 petition denied due to the lack of due diligence by the plaintiffs. See Esczuk v. Chicago Transit Authority (1968), 39 Ill.2d 464, 236 N.E.2d 719; Canton v. Chorbajian (1980), 88 Ill.App.3d 1015, 44 Ill.Dec. 74, 410 N.E.2d 1166.
In summary, the trial court properly exercised its discretion in striking plaintiffs' section 2-1301(e) motion under local court rules for failure to timely present it to the court for a hearing. The trial court properly denied plaintiffs' section 2-1401 petition for a lack of due diligence.
The judgment of the circuit court is affirmed.
Affirmed.
BOWMAN and WOODWARD, JJ., concur.